291 So.2d 774 (1974)
B. J. TINER et al., Plaintiffs-Appellees-Respondents,
v.
AETNA LIFE INSURANCE COMPANY, Defendant-Appellant-Relator.
No. 54129.
Supreme Court of Louisiana.
April 29, 1974.
*775 Charles W. Salley, Lunn, Irion, Switzer, Johnson & Salley, Shreveport, for defendant-appellant-relator.
Sydney B. Nelson, Pugh & Nelson, Shreveport, for plaintiffs-appellees-respondent.
TATE, Justice.
Betty Jane Tiner, the policyholder, joined by her husband sues her hospital and medical expense insurer. The trial court awarded her $790.11 benefits for medical treatment arising out of a kidney infection and allergy-fever conditions. The court of appeal affirmed. 285 So.2d 813 (La.App. 1973); certiorari granted, La., 286 So.2d 656 (1973).
The defendant Aetna's policy was issued pursuant to an application taken by A. M. Abramson. He interviewed Betty Tiner's parents and completed an Aetna application for them by checking blocks and writing answers based on information secured from them. All previous courts have found that the elder Tiners truthfully answered all of Abramson's queries as to Betty's past health and medical history, but that Abramson's completion of at least one one of the many queries did not correctly reflect information furnished by them.
*776 The essential issue is whether the defendant insurer Aetna is bound by the knowledge and action of A. M. Abramson, through whom the Aetna policy was bought for Betty Jane Tiner by her parents.
Aetna acknowledges that, under the circumstances here shown, if Abramson was its agent, it would be bound by the knowledge of Abramson, acquired from truthful information of Betty's previous health history given him by the senior Tiners, despite Abramson's inaccuracy or inadequacy in transcribing on the application the information furnished by them. Telford v. New York Life Insurance Co., 227 La. 855, 80 So.2d 711 (1955); Harris v. Guaranty Life Insurance Co., 226 La. 152, 75 So.2d 227 (1954); Manuel v. American Income Life Insurance Co., 212 So.2d 169 (La. App.1968), affirmed 254 La. 316, 223 So.2d 817 (1969); Annotation, Insurance ApplicationsFalse Answers, 26 A.L.R.3d 6 (1969). The insurer Aetna contends, however, that the same rule should not apply when its policy is issued through a broker, rather than an agent, since a broker should be regarded as negotiating on behalf of a prospective insured, see La.R.S. 22:1162, rather than as acting as an agent of the insurance company.
The facts show:
Betty Tiner's father desired to obtain medical expense insurance for his daughter, then unmarried. He was informed Abramson sold such insurance and therefore telephoned him at his office. Tiner did not know (or care) what company Abramson represented. In fact, Abramson was an employee and registered agent of another company (Equitable), but he handled individual medical-expense policies for Aetna as a broker, since his own company did not sell them.
Abramson came to Tiner's home. He brought with him an Aetna application form, as well as an Aetna rate book. He completed the application by asking Mr. and Mrs. Tiner questions from the application concerning Betty's prior history and other personal characteristics; he then checked the place for Betty to sign and left the completed application form with the Tiners for them to send to him, along with the check. Betty signed it at the place checked that evening, and the form was mailed. The policy was in effect and premiums paid for twenty-one months before Aetna refused to pay the present claim.
Abramson used the same Aetna forms and ratebook and received the same commission as did an Aetna agent. The application received from him was processed in the same way as would an application received from a registered agent of Aetna.
We find no reason to question the factual finding of the trial and intermediate courts that the information furnished by the Tiners and the application signed by Betty was given or done in good faith, upon full disclosure to Abramson of the circumstances known to or inquired of them, and without any intent to deceive.
Aetna resists liability and contends that the policy is void because of an alleged material misrepresentation in the application. The alleged misrepresentation involved is a check mark placed in the "no" box of one of the subdivisions of Question 13 of the application. Question 13 asked: "Has any person to be covered:" and subdivision c. continued: "Ever had any mental, nervous, physical, or functional disorder or impairment?". Following this subdivision (as every other subdivision) was a "yes" box or a "no" box, one of which was to be checked.
The form shows that the agent had initially checked the "yes" box to Question 13 c., but that he had scratched out that check mark and inserted instead a check mark in the "no" box.
The evidence further indicates: When Abramson asked the senior Tiners this question, they hold him that Betty had *777 had some nervous or mental troubles and had received some psychiatric treatment. Abramson then checked the "yes" box. However, upon further interrogation by Abramson, after the Tiners informed him that the trouble had consisted of a brief hospitalization in 1968 and four outpatient treatments in August and September of 1969 (more than six months previously), Abramson scratched out the "yes" answer and instead checked the "no" answerbecause, as he testified, the explanation minimized the prior nervous condition.
As earlier noted, if Abramson was an agent, Aetna under the jurisprudence would be unquestionably bound by its agent's actions in so completing the application and would be bound by the full and complete disclosures made to its agent by the Tiners. Further, under the jurisprudence, the Tiners were entitled to rely upon and to sign the application as completed by Abramson, relying upon his expertise in interpreting the nature of the information sought by the company he represented.[1] There is thus no material misrepresentation made by the applicants, so as to entitle the insurer to nullify its policy.
Nevertheless, Aetna contends, it cannot be bound by the acts of Abramson in the present instance, because Abramson was a broker who could place insurance with any company he wanted, rather than an agent of Aetna "authorized in writing" to act as its representative, La.R.S. 22:1161.
The error in this reasoning is that, while the statutory definitions of agent, broker, or solicitor, see La.R.S. 22:1161-22:1163, may determine what sort of license, pre-requisites, or examination is required, La. R.S. 22:1166, 22:1167, it is not determinative of whether, in a given instance, a broker or solicitor may not also serve as an agent of the insurer. As noted in Mathews v. Marquette Casualty Co., La.App., 152 So.2d 577 (1963), certiorari denied, 244 La. 662, 153 So.2d 880 (1963), the clear weight of authority is that statutes regulating licensing and defining agents, brokers, and solicitors are not intended to change or to exclude the general laws of agency: "these regulatory statutes do not prevent the courts from finding that an agency relationship exists in fact, outside the scope of the statutes." 152 So.2d 582.
As the decision notes, the Louisiana insurance statutes do not prohibit the courts from finding the legal relationship of principal-agent exists, so as to bind the insurer, despite the failure of the person acting for the insurer to have been specifically licensed as its agent. This is the general rule in other jurisdictions also, where a broker may be found under the facts to have been an agent of the insurer for the purpose involved. See 3 Couch on Insurance 2d, Sections 25:95, 26:162 (1960); 16 Appleman, Insurance Law and Practice, Section 8731 (1968).
Under the circumstances here shown, Abramson was acting as agent of Aetna in selling Aetna's insurance policy to the Tiners. As stated at 3 Couch on Insurance 2d, Section 26:25, pp. 481-82 (1960): "* * * if one purporting to act as an agent receives an application, accepts the premium, secures and delivers the policy, and does everything necessary to attachment of the risk, the insured may assume that he is the properly authorized agent of the insurer."
A broker who procures insurance which is accepted and issued by an insurance company pursuant to application forms furnished to the broker by the company is considered the agent of such company in the issuance of the policy. 3 *778 Couch on Insurance 2d, Section 26:25 (1960); 16 Appleman on Insurance Law and Practice, Section 8731 (1968). As stated in the latter source, pp. 287-88, "The knowledge of such an agent or his mistake of fact may become that of the insurer."
We find the evidence supports the finding of the previous courts that Abramson was acting as an agent for the insurer Aetna in the issuance of this policy. Thus, his knowledge and acts are imputed to Aetna. If indeed his notation of the truthful information furnished him by the Tiners in response to Question 13c. was a misrepresentation, the insured is not chargeable with any misrepresentation with an intent to deceive. The insurer is therefore not entitled to nullify the policy issued by it through Abramson.
The insurer's argument is almost entirely based upon the decision of this court in Morris McGraw Wooden Ware Co. v. German Fire Ins. Co., 126 La. 32, 52 So. 183 (1910).
By the rather complicated facts of this case, where fire insurance had been placed by the insured with 37 companies through a broker, the broker had been instructed by the insured to cancel all of his policies above a certain total amount, without the insured particularizing which companies's policies were to be cancelled. The broker intended to cancel policies with four companies, but failed to do so before the fire. After the fire, the defendant fire insurer (one of the 37) contended it was liable for only its pro rata share (as 1 of 37 companies, rather than one of 33). This court upheld the insurer's contention and held that, under the facts,[2] the broker was the agent of the insured rather than of the (37) insurers, so the four other policies had not been cancelled simply by notification to the broker.
Thus, the decision is not authority for any hard-and-fast rule that a broker may never be an agent of an insurer from whom he secures a policy for an insured. It is, rather, only an illustration of the general principle that, whether a broker in any particular transaction acts as the agent of the insured or of the insurer, is a question of fact dependent on the particular circumstances of the case. 3 Couch on Insurance 2d, Sections 25:95, Sections 26:152, 153 (1960).
For the reasons assigned, we affirm the judgments of the district and intermediate courts awarding the plaintiff the benefits due her under the defendant insured's policy. All costs are assessed to the defendant insurer.
Affirmed.
NOTES
[1] For instance, a literal answer to question 13 c. would require listing every ailment of a lifetime, no matter how minor, information obviously more detailed than that expected on the six blank lines inserted to explain the "yes" answer to several subdivisions in questions 13 through 15.
[2] See 126 La. 38, 52 So. 185: "If the facts in the case in hand were different from that which they were in the cited cases, our conclusion would be different, for it is in great part a question of fact."