416 So.2d 279 (1982)
Curtis BATISTE, et ux., Plaintiffs-Appellants,
v.
SECURITY INSURANCE GROUP, et al., Defendants-Appellees,
Warren J. Lacombe, Defendant-Appellant.
No. 8807.
Court of Appeal of Louisiana, Third Circuit.
May 26, 1982.
Rehearing Denied July 21, 1982.
*280 Dee D. Drell of Gold, Little, Simon, Weems & Bruser, Alexandria, for plaintiffs-appellants.
Sandoz, Sandoz & Schiff, Leslie J. Schiff, Guglielmo & Lopez, Peter Caviness, Opelousas, *281 Michael J. Johnson, Cottonport, for defendants-appellees.
Before CULPEPPER, FORET and DOUCET, JJ.
FORET, Judge.
Curtis Batiste and his wife, Agnes Batiste (plaintiffs), brought this action to recover $110,000 for the destruction of their home and its contents by fire.[1] Named defendants are: The Security Insurance Group (Security) and/or Connecticut Indemnity Company (Connecticut), foreign insurance companies authorized to do and doing business in this State; the American Modern Home Insurance Company (American), a foreign insurance company also authorized to do and doing business in this State; Opelousas Underwriters, Inc. (Opelousas Underwriters), a Louisiana corporation, and Warren J. Lacombe (Lacombe), a resident of Rapides Parish. American and Opelousas Underwriters brought third party demands naming Lacombe as third party defendant thereto.
Security and Connecticut filed a motion for summary judgment and the trial court rendered judgment upon the motion in their favor, dismissing plaintiffs' action against them. Plaintiffs have taken no appeal from this judgment, and it is final. The trial court rendered judgment, after trial, in favor of plaintiffs and against Lacombe, in the full sum of $50,000, together with interest from date of legal demand until paid. The trial court further rendered judgment in favor of American and Opelousas Underwriters, dismissing plaintiffs' demands against them with prejudice. Finally, the trial court rendered judgment in favor of Lacombe, dismissing the third party demands of American and Opelousas Underwriters against him.
Plaintiffs appeal devolutively from the trial court's judgment, and raise the following issues:
Whether the trial court committed manifest error:
(1) in finding that the completion of plaintiffs' application for insurance coverage with American did not create a contract or policy of insurance between American and them;
(2) in finding no liability on American's part for the loss suffered by plaintiffs under the theory of product liability (the application form being the alleged defective product);
(3) in failing to find that American was estopped from denying coverage because of the language used in the application form, which it prepared;
(4) in finding that Lacombe was neither the agent of Opelousas Underwriters, nor American; and
(5) in failing to award plaintiffs damages for additional living expenses.
Lacombe filed a motion for a suspensive appeal from the trial court's judgment. The trial court granted the motion conditioned on Lacombe's posting a bond in the amount of $75,000. Lacombe failed to post a bond and he will be considered as having appealed devolutively. He raises the following issue:
Whether the trial court committed manifest error in finding that he was plaintiffs' agent and liable to them for failing to perform his duty to diligently pursue their application and to timely inform them that no coverage had been provided, and that his actions warranted an assumption on plaintiffs' part that they were properly insured.
American and Opelousas Underwriters have answered the appeal asking for judgment in their favor on their third party demands against Lacombe, if this Court reversed the judgment of the trial court and finds them liable to plaintiffs.

*282 FACTS
This action arises out of the occurrence of a fire on September 11, 1979, that totally destroyed a home and its contents belonging to plaintiffs.
Plaintiffs had insured their home and its contents against loss by fire under a policy issued to them by Connecticut. However, that policy expired on August 10, 1979, approximately one month before the fire. Plaintiffs knew that the policy had expired and had gone to Lacombe on August 24, 1979, to secure a new homeowners insurance policy. On that date, an application for such insurance with American was prepared for them by either Lacombe or his secretary, together with a finance agreement for a portion of the premium therefor. Plaintiffs apparently gave Lacombe $15 in cash and a check for $106 as a down payment on the premium. Plaintiffs asked Lacombe to hold the check until August 31, 1979, when they would come and exchange cash for it. They did this and assumed that they had obtained insurance coverage which was in effect. Unfortunately, this assumption proved wrong as they subsequently discovered when they attempted to file a claim for their loss.

PLAINTIFFS' ALLEGED POLICY OR CONTRACT OF INSURANCE WITH AMERICAN
Plaintiffs contend that the trial court committed manifest error in finding that the form completed for them by Lacombe or his secretary was merely an application for insurance and did not create a contract or policy of insurance. The trial court found that this completed form evidenced nothing more than an offer or proposal made by plaintiffs to induce the insurer (American) to issue a policy and that there was no contract until the offer was accepted by the insurer.
Plaintiffs argue that the form represents a binder, or other contract for temporary insurance, within the meaning of LSA-R.S. 22:691(C).[2] In essence, plaintiffs argue that because the form refers to the applicant as the "insured" in certain places thereon, it constituted a contract between the applicant and the insurer. We have reviewed the form and note that it concludes with the following sentence: "The producer acknowledges that he is acting with the authority of the above named insured in providing the information contained in the above application and in signing the application as authorized representative of the insured." (emphasis ours.) Thus, it does identify itself as being nothing more than an application.
We conclude that the trial court correctly found that the application form supplied by American evidenced nothing more than offers made by the applicants to it upon completion and that such offers never became contracts until accepted by it.

PRODUCT LIABILITY
Plaintiffs contend that the trial court committed manifest error in finding no strict liability on the part of American for the loss suffered by them which they argue was caused by a defective product supplied by it, i.e., the application form. Plaintiffs rely on Weber v. Fidelity & Casualty Insurance Company of New York, 250 So.2d 754 (La.1971), in support of their argument. We find no merit whatsoever to this argument, and dismiss it without discussion.

EQUITABLE ESTOPPEL
Plaintiffs argue that American and/or Opelousas Underwriters should be estopped from asserting that no policy had been issued to plaintiffs because of plaintiffs' *283 alleged detrimental reliance on language contained in the application form. They rely on Travelers Insurance Company v. United States Fidelity & Guaranty Company, 168 So.2d 439 (La.App. 3 Cir. 1964), where this Court said:
"Equitable estoppel `arises where a person, by his acts, representations, or admissions, or even by his silence when it is his duty to speak, intentionally or through culpable negligence induces another to believe that certain facts exist, and the other person rightfully relies and acts on such belief, and will be prejudiced if the former is permitted to deny the existence of such facts.' 31 C.J.S. Estoppel § 59. Shirey v. Campbell, La.App. 2 Cir., 151 So.2d 557."
We find the Travelers case to be inapposite. It is our opinion that there is no merit to plaintiffs' argument. Both plaintiffs admitted that they had not read the application form. Obviously, it was impossible for them to rely on something which they had not read.

MANDATE
Plaintiffs contend that the trial court committed manifest error in refusing to find that any agent-principal relationship existed between Lacombe, as agent, and American and/or Opelousas Underwriters as principal(s). The trial court found that Lacombe was an insurance "broker" with respect to American and Opelousas Underwriters and that he was actually plaintiffs' agent.
United Credit Plan of Jena, Inc. v. Hailey, 341 So.2d 58 (La.App. 3 Cir. 1976), stated on page 61 that:
"In Karam v. St. Paul Fire & Marine Insurance Co., 265 So.2d 821 (La.App. 3 Cir. 1972), affirmed 281 So.2d 728 (La. 1973), we quoted with approval the following statement in Appleman, Insurance Law and Practice, Sec. 8725:
`A person delegated to solicit insurance for a particular company, and to refrain from soliciting insurance for any other company, is an agent, and not a broker. The fundamental distinction in the legal result is that the acts of one procuring insurance as the agent of the insurer are imputable to it, while those of one acting as the agent of the insured, or as a broker, are not; the broker representing the insured for the purpose of procuring the policy, and the insurer only in order to receive and transmit the premium.'"
See also Britten v. Payne, 381 So.2d 855 (La.App. 1 Cir. 1980), writ denied, 384 So.2d 800 (La.1980).
The trial court correctly noted that the evidence showed that:
"At the time in question, Lacombe was not an agent capable of binding any company that could write property owner's coverage. Lacombe was free to place the application with any one of several companies, one of which was Opelousas Underwriters and upon acceptance of the application by Opelousas Underwriters, coverage was binding. Lacombe was under no obligation to write for Opelousas Underwriters, nor did he hold a power of attorney for Opelousas Underwriters. Opelousas Underwriters had no agents. It issued binding authority to no one. It solicited brokers such as Lacombe to place applications with the company before the risk could be underwritten."
However, plaintiffs point to the evidence showing that Opelousas Underwriters had an ongoing billing procedure with Lacombe and that Lacombe had received a memorandum from Opelousas Underwriters asking him to sign it as "agent". They also note that a letter written by an employee of Opelousas Underwriters to Lacombe began with the words "Dear Agent". Under such facts and circumstances, plaintiffs argue that Tiner v. Aetna Life Insurance Company, 291 So.2d 774 (La.1974), is authority for finding Lacombe to be an agent of Opelousas Underwriters. Tiner, quoting from 3 Couch on Insurance 2nd, § 26:25, pages 481-482 (1960), stated on page 777 that:
"` * * * if one purporting to act as an agent receives an application, accepts the premium, secures and delivers the policy, and does everything necessary to attachment *284 of the risk, the insured may assume that he is the properly authorized agent of the insurer.'"
Tiner then stated, on page 778, the general principle that:
"whether a broker in any particular transaction acts as the agent of the insured or of the insurer, is a question of fact dependent on the particular circumstances of the case. 3 Couch on Insurance 2d, Sections 25:95, Sections 26:152, 153 (1960)."
There is one very important distinction between the facts in Tiner and those present in this case. In Tiner, the insurer who was sought to be held liable for the acts of its purported agent had issued an insurance policy based on an application completed by that agent. In the case sub judice, no application was received, nor was any policy issued, as a result of the actions of Lacombe.
Our review of the record establishes that the trial court's finding that Lacombe was neither an agent of American, nor of Opelousas Underwriters, is correct.

LACOMBE'S ALLEGED LIABILITY FOR PLAINTIFFS' LOSS
Lacombe contends that the trial court committed manifest error in finding that he had breached his duty to plaintiffs to diligently pursue their application for insurance and to inquire, within a reasonable time, why no response had been received from Opelousas Underwriters regarding that application. The trial court found that, as plaintiffs' agent, Lacombe had been negligent in handling their insurance application and that he was liable for the loss suffered by them. Plaintiffs' claim is based on the provisions of LSA-C.C. Articles 2315 and 2316, as well as LSA-C.C. Article 3003, which provides, in pertinent part:
"Art. 3003. Mandatary's liability for fault or negligence
Art. 3003. The attorney is responsible, not only for unfaithfulness in his management, but also for his fault or neglect.
. . ."
We believe that the elements of a cause of action brought under the provisions of LSA-C.C. Article 3003 are identical to those of a cause of action brought under the provisions of LSA-C.C. Articles 2315 and 2316, i.e., cause-in-fact, a duty owed, breach of that duty, and an injury falling within the scope of protection afforded by the duty breached. Ardoin v. Hartford Accident & Indemnity Co., 360 So.2d 1331 (La. 1978).
The application for insurance with American, which was completed on behalf of plaintiffs by Lacombe or his secretary, is dated August 31, 1979. Lacombe, at first, testified that the application was filled out that day. However, he later contradicted himself and testified that it was filled out on August 24, 1979. Lacombe stated that he told the plaintiffs at this time that he had no authority to issue a binder, or temporary contract of insurance, with any company. He testified that the application had been mailed to Opelousas Underwriters on August 31, 1979.
Sandra Bonoil, one of Lacombe's secretaries, testified that she did fill out the application form and signed Lacombe's name to it. She too stated that she believed that the form had been mailed to Opelousas Underwriters, although she had no personal knowledge that this was done since Lacombe would bring the office mail to the post office himself. She explained that the usual office procedure was to accompany such an application with an agency check for the premium or down payment on such. However, after reviewing the agency's checkbooks, she agreed that no check had been written in connection with plaintiffs' application. Bonoil testified that she never indicated to plaintiffs that they had insurance coverage, but she could not remember if she had told them that they had no such coverage.
A check for $280.00 made out to Opelousas Underwriters by the Warren Lacombe Insurance Agency, Inc. on behalf of Curtis Batiste was introduced in evidence. It was dated August 31, 1979. However, the *285 checkbook stubs show that the check was taken from a group of checks that were dated, and apparently written, on September 12, 1979, the day after the fire occurred. The check showed no signs of ever having been run through the bank for payment.
Plaintiffs testified that it was Lacombe who filled out the application. They stated that this was done on August 24, 1979, and that Lacombe told them that they had insurance coverage starting that day. Curtis Batiste testified that he gave Lacombe a check for $106 and $15 cash, on August 24, 1979, for a total down payment of $121 on the insurance premium because Lacombe had told him that the down payment had to be paid before there would be coverage. The check was to be held by Lacombe in lieu of cash for the down payment. Mr. Batiste stated that he went to Lacombe's office on August 31, 1979, and gave Lacombe $106 cash to get his check back.
LSA-C.C. Article 3002 provides, in pertinent part:
"Art. 3002. Mandatary's duty of performance
Art. 3002. The attorney in fact is bound to discharge the functions of the procuration, as long as he continues to hold it, and is responsible to his principal for the damages that may result from the non-performance of his duty.
. . ."
Karam v. St. Paul Fire & Marine Ins. Co., 281 So.2d 728 (La.1973)[3], held on pages 730 and 731 that:
"An insurance agent who undertakes to procure insurance for another owes an obligation to his client to use reasonable diligence in attempting to place the insurance requested and to notify the client promptly if he has failed to obtain the requested insurance. The client may recover from the agent the loss he sustains as a result of the agent's failure to procure the desired coverage if the actions of the agent warranted an assumption by the client that he was properly insured in the amount of the desired coverage."
Lacombe, as plaintiffs' insurance agent, owed this duty to them.
We find, as did the trial court, that Lacombe failed to send plaintiffs' application to Opelousas Underwriters. The evidence clearly shows that Opelousas Underwriters never received the application form.
The trial court found that Lacombe had failed to follow up on the application with diligence after he received no response concerning it from American and/or Opelousas Underwriters.
We note that the application form was completed on August 24, 1979, at the earliest, which was less than three weeks before the fire occurred. The record contains no evidence to show that such applications for insurance coverages are normally approved by the insurer and notification of that approval received by the individual insurance agent in less than three weeks' time. Therefore, we believe that the trial court erred when it based its holding on the grounds that Lacombe had failed to follow up on the application. We prefer to base our decision herein, affirming the trial court judgment, on the fact that Lacombe breached the duty owed by him to plaintiffs when he failed to send the application to Opelousas Underwriters and further, that, as found by the trial court, Lacombe's actions warranted an assumption by the plaintiffs that they were properly insured. If Lacombe did not send the application to Opelousas Underwriters, it is obvious that he would have received no response from them. Therefore, the real crux of this case is not the failure to follow up with diligence, but rather the failure to send in the application to begin with.
It is obvious that the loss suffered by plaintiffs falls within the scope of protection afforded by the duty breached. It is *286 more probable than not that plaintiffs would have suffered no loss had Lacombe timely sent the application to Opelousas Underwriters. Opelousas Underwriters had the authority to issue a binder, or temporary contract of insurance, once the application was received. This binder would have protected plaintiffs against the loss suffered under the same conditions and to the same amounts as set forth on the application form.

AMOUNT OF DAMAGES
The trial court awarded plaintiffs $40,000 in damages for the destruction of their home and $10,000 for their personal property that was also destroyed in the fire. The application form provided that plaintiffs would have $40,000 coverage on their home and $16,000 coverage on their personal property. However, plaintiffs limited their claim to $10,000 for their personal property and were awarded that amount.
Plaintiffs have appealed from the trial court's judgment seeking an award for additional living expenses they incurred as a result of the fire. They argue that the application provides for coverage of up to $20,000 for this item and that they should be allowed to recover this amount. A review of that form clearly shows that this was a mistake. Recovery for additional living expenses was limited by terms printed on the form to 5% of the base market value of the house, which was $40,000. Thus, plaintiffs could have only recovered $2,000 for this item.
The trial court gave no reasons for its failure to award this amount to plaintiffs for additional living expenses. However, after reviewing the record, we find that plaintiffs failed to prove that they had incurred any additional living expenses as a result of the fire.
For the above and foregoing reasons, the judgment of the trial court is affirmed.
All costs of this appeal are assessed equally between plaintiffs-appellants and Warren J. Lacombe, defendant-appellant.
AFFIRMED.
NOTES
[1] This case was consolidated for trial with Franklin Finance Co. v. Curtis Batiste, et ux, # 80-276, 12th Judicial District Court, Avoyelles Parish, La. Judgment was rendered in the latter action pursuant to a stipulation entered into by the parties to that action. Thus, there was no appeal therefrom.
[2] "C. Binders or other contracts for temporary insurance may be made, orally or in writing, and shall be deemed to include all the terms of such standard fire insurance policy and all such applicable endorsements, not disapproved by the fire insurance division as may be designated in such contract of temporary insurance; except that the cancellation clause thereof specifying the hour of the day at which the insurance shall commence, may be superseded by the express terms of such contract of temporary insurance."
[3] For later cases on this issue, see the following: Stacy v. Petty, 362 So.2d 810 (La.App. 3 Cir. 1978); Arceneaux v. Bellow, 395 So.2d 414 (La.App. 3 Cir. 1981), writ denied, 400 So.2d 669 (La.1981); and Boothe v. American Assurance Co., 327 So.2d 477 (La.App. 1 Cir. 1976), writ denied, 330 So.2d 315 (La.1976).