505 So.2d 854 (1987)
Kenneth R. BOYTER and Sondra K. Boyter, Plaintiffs,
v.
BLAZER CONSTRUCTION COMPANY, INC., Poco Environmental Services, Inc., Raymond Weathers and Liberty Mutual Insurance Company, Cross-Claimants-Appellees,
General Agents Insurance Company, Defendant in Cross-Claim-Appellant.
Willie M. REID and Robert Reid, Jr., Plaintiffs,
v.
BLAZER CONSTRUCTION COMPANY, INC., Poco Environmental Services, Inc., Raymond Weathers and Liberty Mutual Insurance Company, Cross-Claimants-Appellees,
General Agents Insurance Company, Defendant in Cross-Claim-Appellant.
Nos. 18536-CA, 18537-CA.
Court of Appeal of Louisiana, Second Circuit.
April 1, 1987.
Rehearing Denied April 30, 1987.
*855 Lunn, Irion, Johnson, Salley & Carlisle by Charles W. Salley, James A. Mijalis, Shreveport, for General Agents Ins. Co., defendant in cross-claim-appellant.
Cook, Yancey, King & Galloway by Eskridge E. Smith, Jr., Kelly W. Strickland, Shreveport, for Blazer Const. Co., Poco Environmental Services, Raymond Weathers and Liberty Mutual Ins. Co., cross-claimants-appellees.
Before FRED W. JONES, Jr., SEXTON and LINDSAY, JJ.
LINDSAY, Judge.
Two separate lawsuits were filed as a result of an automobile accident which occurred on August 2, 1984. The first was filed by Kenneth and Sondra Boyter on October 31, 1984. On December 3, 1984, Robert Reid, Jr. and his wife, Willie Reid, filed suit. The Reids entered into a settlement prior to the beginning of trial with Liberty Mutual, the insurer of Blazer Construction Co., Inc. The Boyters entered into a settlement agreement with Liberty Mutual after the first day of the trial. The remaining issues involve the following five *856 defendants[1]: Blazer Construction Co., Inc. (Blazer); Poco Environmental Services; Inc. (Poco); General Agents Insurance Company (General Agents); Raymond Weathers; and Liberty Mutual Insurance Company (Liberty Mutual). The primary issue to be resolved concerns whether an insurance policy issued by General Agents to Poco was in effect at the time of the accident, and, if in effect, whether the policy included coverage of non-owned and hired automobiles. Trial was held on January 20 and 21, 1986. The trial court rendered judgment on June 2, 1986, finding that both Liberty Mutual, as insurer for Blazer, and General Agents, as insurer for Poco, provided primary coverage for the claims made by the plaintiffs and therefore, General Agents was liable unto Blazer, Poco, Raymond Weathers, and Liberty Mutual for one-half of the monies paid in settlement to the various plaintiffs.
The evidence surrounding the accident revealed that on August 2, 1984, Sondra Boyter was proceeding south on Highway 171 north of Mansfield, Louisiana. Ms. Willie Reed was a guest passenger in the Boyter vehicle. Immediately behind the Boyter vehicle was a large 18 wheeled truck owned by Blazer Construction Company and driven by Raymond Weathers. At the time of the accident, the truck was leased by Blazer Construction Company to Poco. Blazer and Poco are both closely held family corporations and they share a common ownership.
Immediately prior to the accident, the Boyter vehicle and the Blazer truck were both travelling in a southerly direction on U.S. Highway 171 south of Shreveport. The Blazer truck was following the Boyter vehicle. Devard Meacham was pulling a mobile home with his truck and was travelling north on Highway 171. August 2, 1984 was a clear day, the road was dry and there were no defects in the road surface. The view of those motorists driving on this highway was unobstructed.
The Boyter vehicle apparently slowed and moved over to the side of the road in order to allow the approaching mobile home to pass. According to State Trooper Frank Reger, the Boyter vehicle had its right front and right rear tires approximately 12-18 inches on the outside of the fog line when impact occurred. (The fog line is the white line down the side of a highway). Raymond Weathers was not able to stop or slow his vehicle before he ran into the rear of the Boyter vehicle. The Boyter vehicle was severely damaged and Ms. Boyter and Ms. Reed sustained severe injuries.
Alvin Powell is a co-owner of the family owned Poco Environmental Services, Inc., a hazardous waste transporting company. In the usual course of business, Poco often required additional trucks in order to timely carry out and complete its contracts. Hence, Poco frequently leased trucks from Blazer Construction Company, another family owned business, as well as from other companies. Mr. Powell testified that whenever a job was to be performed which required the transportation of hazardous waste, the Public Service Commission required that a permit be obtained. In order to obtain a permit, the Public Service Commission must approve any lease by which the transporter of hazardous waste leases additional, non-owned vehicles. The PSC requires that such a lease provide that both the lessor and lessee of the vehicle carry liability insurance for the benefit of the public.
Poco was originally insured by Liberty Mutual Insurance Company. Mr. Billy McJunkins was Liberty Mutual's agent. Mr. McJunkins informed Poco that Liberty Mutual would not renew its current, public liability insurance policy with Poco because the company had made a decision that it would no longer cover hazardous waste transporters. Mr. Powell of Poco asked Mr. McJunkins to obtain other insurance for Poco and filled out an application in that regard. One of the items of coverage *857 required was for hired and non-owned vehicles leased and used by Poco in its business.
Mr. McJunkins contacted Dick Chilvers of the Peterson Insurance Agency for help in finding coverage for Poco. After their initial conversation, Mr. McJunkins mailed to Mr. Chilvers an application requesting $500,000.00 in liability coverage on two vehicles operating within a 50 mile radius of the company, with the same coverage for non-owned and hired vehicles. Insurance was eventually obtained for Poco by going through the state's assigned risk pool. Coverage was assigned to United States Fire Insurance Company (U.S. Fire) through the Clum and Foster Agency. A policy was issued by U.S. Fire to Poco which covered the two vehicles owned by Poco, as well as non-owned and hired vehicles.
After investigating the driving records of Poco's drivers, U.S. Fire decided to raise the premium. Mr. Powell felt that the premium charged by U.S. Fire was excessive and asked Mr. McJunkins to attempt to obtain other insurance. The U.S. Fire policy was to expire on July 30, 1984. In early July of 1984, Mr. McJunkins contacted Brett Woods at the Corrigan and Jordan Insurance Agency of Dallas, Texas.
Mr. Woods agreed to help locate coverage for Poco and asked for information concerning the company. Mr. McJunkins told Mr. Woods that he already had an application that had been previously filled out by Poco. Mr. McJunkins sent that application to Mr. Woods.
Mr. McJunkins called Mr. Woods sometime between July 15 and July 20 to see if any coverage had been found. Mr. Woods had received the application, but he had not yet placed coverage.
Mr. Woods testified that he did not recall this conversation, although he had received the application from McJunkins on July 9, 1984. The name of the Peterson Insurance Agency was stamped on the front of the application. Mr. Woods did not realize that this application was the one he expected from Mr. McJunkins, so Mr. Woods allowed it to remain on his desk without serious consideration. About one week after its receipt, Mr. Woods called Mr. McJunkins to find out if this was the application he was to receive but Mr. McJunkins was on vacation.
Although the record is unclear, and some evidence is at variance with the testimony of Mr. Woods, it appears that Mr. Woods took some action on or about July 26, 1984 to secure coverage through Ms. Jackie Epperson of C & W Underwriters in Alexandria, Louisiana. Woods indicates that this contact occurred on July 30, 1984. Nevertheless, the record reveals that on July 26, 1984, Ms. Epperson of C & W telephoned Ms. Cynthia Bailey of Crosby and Associates in Kenner, Louisiana. Crosby and Associates had binder authority from General Agents. Ms. Epperson asked for a quote for public liability insurance for Poco on two owned trucks. No request was made for coverage for non-owned and hired vehicles. Ms. Bailey apparently quoted a premium for the requested coverage. No premium was quoted for non-owned and hired vehicles. Although these telephone conversations occurred, the record does not indicate what else transpired relative to coverage before July 30, 1984. Neither Ms. Bailey nor Ms. Epperson testified at trial, although Ms. Bailey's affidavit providing the above information was filed in the record by stipulation.
At any rate, on July 30, 1984, Ms. Kathy Meacham called Mr. Woods. Kathy Meacham is Mr. McJunkins' business sales assistant at Liberty Mutual. When Mr. McJunkin went on vacation, he left instructions for Ms. Meacham to call Mr. Woods and make sure that the Poco coverage was in effect by July 30, 1984, the date upon which the previously placed coverage expired.
According to the testimony of Mr. Woods, Ms. Meacham called him during the morning of July 30, 1984, and told him that Poco needed the insurance on that day. He also claims that Ms. Meacham told him that the insurance was needed on two trucks, although she denied that she discussed the type of coverage required.
*858 Mr. Woods testified that he then called C & W Underwriters in Alexandria, Louisiana, and spoke to Mr. Jim Campo. Mr. Campo stated he was busy and would have someone call him back shortly. Ms. Jackie Epperson returned Mr. Woods call. Mr. Woods gave her sufficient information for her to locate the required insurance. Ms. Epperson contacted Cynthia Bailey of Crosby and Associates and gave Ms. Bailey the information relayed to her by Mr. Woods. Crosby and Associates was able to bind insurance with General Agents and relayed that information back to Ms. Epperson. Ms. Epperson called Mr. Woods, informed him of the premium, and stated that coverage could be bound, if desired, on the two trucks owned by Poco.
Regardless of whether these events transpired on more than one day, it is clear that on July 30 Mr. Woods informed Ms. Meacham of the premium amount. Ms. Meacham obtained Mr. Powell's approval for the amount of the premium, and relayed that information to Mr. Woods. Mr. Woods called Ms. Epperson to tell her that the premium was acceptable and she told Mr. Woods that coverage was bound. Mr. Woods again contacted Ms. Meacham and confirmed that coverage was bound. Mr. Woods did not give Ms. Meacham the name of the insurance company with whom coverage was placed.
Ms. Meacham contacted Poco and obtained a check from Poco to pay the initial premium on the policy. The check was "probably" made out to Corrigan and Jordan Insurance Agency and was sent to Mr. Woods. The check was sent along with a cover letter dated August 1, 1984, explaining that the check was for an "automobile liability policy effective July 30, 1984."
A memo dated August 2, 1984 was received by Kathy Meacham from Brenda Gordon of Corrigan and Jordan Insurance Agency. Attached to the memo was an application for an insurance policy. This is also the date of the accident in question.
The application received by Ms. Meacham from Ms. Gordon was to be filled out by Mr. Powell of Poco. Many spaces in the application, including the request for non-owned and hired coverage, had already been filled in by Ms. Gordon. Ms. Gordon obtained her information from the application previously sent by Mr. McJunkins to Mr. Woods. The application was previously signed by Mr. Lancaster of Corrigan-Jordan on July 30, 1984.
After the accident, Mr. McJunkins spoke to Mr. Woods about the accident and told him that he felt Poco was insured under the non-owned and hired coverage. Mr. Woods stated that he was unsure whether non-owned and hired coverage was included in the policy. Mr. Woods later called back and told Mr. McJunkins that the accident was not covered. Mr. McJunkins stated he was surprised because he had never seen a commercial policy without non-owned and hired coverage. Furthermore, he felt an error must have been made because the application which he forwarded to Mr. Woods specifically requested non-owned and hired coverage.
The only written binder ever received by Mr. McJunkins for Poco was from Crosby and Associates, Inc. and signed by Mr. Crosby. Coverage was effective at 12:01 a.m., July 30, 1984. This binder did not include non-owned and hired coverage.
On October 3, 1984 the policy issued by General Agents Insurance Company was amended to include three additional endorsements, one of which was to cover non-owned and hired vehicles. Also, an additional premium was charged beginning on October 3, 1984.
The trial court found that Ms. Meacham reasonably relied on the verbal binder from Mr. Woods and in assuming that coverage included non-owned and hired vehicles. Therefore, the policy issued by General Agents on July 30, 1984 was reformed to cover non-owned and hired vehicles. As to Poco, the court held that Brett Woods was the agent of General Agents when he took the application, confirmed that coverage was bound, forwarded an application of General Agents to Poco, and received a premium from Poco. Therefore, General Agents was bound for non-owned and hired coverage. The court held that General Agents and Liberty Mutual provided primary *859 coverage with equal policy limits. Hence, coverage was pro-rated, one-half to each.
General Agents has appealed the ruling of the trial court and has assigned numerous errors. The first issue to be dealt with is whether the trial court was correct in determining that Poco was responsible for the negligence of Raymond Weathers. General Agents then argues that, if Poco is liable, neither the insurance policy issued by General Agents nor the oral binder issued by Mr. Woods covered non-owned and hired vehicles. Moreover, Mr. Woods, whether he knew of the request for non-owned and hired coverage or not, did not have authority to bind General Agents and was not an agent of General Agents, but of Poco. General Agents also argues that, if it is found that the insurance issued by it covers non-owned and hired vehicles, Poco should be barred from recovering under the insurance policy because of material misrepresentations made in its application for coverage. Last, Liberty Mutual contends that the regulations of the Public Service Commission requiring that the lessee obtain liability coverage, makes General Agents the primary insurer and therefore, General Agents should be liable to Liberty Mutual for the full amount paid to settle the plaintiff's claims. Finding that the trial court erred in determining that Mr. Woods was an agent of General Agents, we reverse.
Several of the issues raised on appeal require us to review the factual determinations of the trial court. In so doing, we apply the "clearly wrong" standard enunciated in Arceneaux v. Domingue, 365 So.2d 1330 (La.1978) on remand 370 So.2d 1262, writ denied 374 So.2d 660 (La.1979).

I. Negligence

General Agents contends that the negligence of Raymond Weathers was not proven. However, Mr. Weathers' negligence was established by his own testimony and by the testimony of the investigating state trooper. Weathers was following the Boyter vehicle and ran into it when it slowed. Weathers was given a ticket for driving too close. He later pled guilty to this violation. If Raymond Weathers had maintained a proper lookout and had not followed too closely, the accident would not have occurred. The trial court's finding that Raymond Weathers was negligent was not clearly wrong.
General Agents also contends that it was never proven that Poco was liable for Weathers' negligence. According to General Agents, Poco had leased the truck and its operator from Blazer. Mr. Weathers, the operator, was employed by Blazer and was not even aware that he was performing work for Poco. Hence, a master-servant relationship did not exist between Poco and Weathers. Without the master-servant relationship, Poco cannot be responsible for Weathers' negligence. Griffin v. Motor Transit Company, 127 So. 438 (La. App. 2d Cir.1930).
The trial court was correct in finding that Poco is liable for the negligence of Raymond Weathers under the borrowed employee doctrine. Vincent v. Ryder Enterprises, Inc., 352 So.2d 1061 (La.App. 3rd Cir.1977); LeJeune v. Allstate Insurance Company, 365 So.2d 471 (La.1978). The rules of the Public Service Commission require that all drivers of leased vehicles be under the direct control of the lessee. This requirement was put into effect by a provision in the lease between Poco and Blazer giving Poco control over all drivers of the vehicles which it leased from Blazer. The fact that Mr. Weathers did not know that he was driving for Poco may be explained by the fact that both Poco and Blazer are closely held family corporations owned by members of the same family. Hence, Mr. Weathers was probably receiving instructions from the same person, no matter which company he worked for. The foregoing factors established the control of Poco over Raymond Weathers and therefore, a master-servant relationship existed.
This assignment of error has no merit.

II. Insurance Coverage

A written insurance contract can be reformed to conform to the original intention of the parties thereto, whether for mutual error or for the negligent, mistaken *860 or fraudulent conduct of the agent who issued the policy. If an insurance agent knows of a policyholder's true intention as to the coverage desired, the insurance company is bound by the agent's knowledge, and a policy erroneously issued will be reformed so as to conform to the original intention. Hebert v. Breaux, 285 So.2d 829 (La.App. 1st Cir.1973); Raymond v. Zeringue, 422 So.2d 534 (La.App. 5th Cir.1982).
Therefore, we must ascertain the knowledge of General Agents and, if Mr. Woods is an agent of General Agents, the knowledge of Mr. Woods to determine whether General Agents knew of the intent of Poco to have non-owned and hired vehicle coverage. If knowledge of Poco's intent is found, the issued insurance policy may be reformed to conform to the original intent of the parties.

A. Actual Knowledge
Poco specifically requested coverage for non-owned and hired vehicles. Pursuant to a telephone conversation between Mr. Woods and Mr. McJunkins, Mr. McJunkins forwarded to Mr. Woods a copy of an application previously used by Poco to obtain coverage from U.S. Fire. This application was clearly marked so as to request non-owned and hired coverage. The application form provided a space to be filled out to indicate the amount of time during which hired vehicles would be used. This space was filled in with the words "if any." Both Mr. McJunkins and Mr. Chilvers, an employee of Keith D. Peterson and Co., who qualified as an expert witness, indicated that this was standard language in the industry to indicate that the extent of usage of leased vehicles was presently unknown. The company issuing the insurance would periodically audit the insured to determine the applicable premium. This application was received by Mr. Woods.
General Agents issued an insurance policy covering the vehicles owned by Poco effective July 30, 1984. This coverage was orally bound by agents for General Agents in a conversation with Mr. Woods. However, there is no testimony or evidence of any kind that any person associated with General Agents actually knew that the coverage requested by Poco included non-owned and hired vehicles. Mr. Woods was the only person who knew or should have known that this type of coverage was requested. From all evidence presented, it is evident that Mr. Woods did not communicate the request for non-owned and hired coverage to any individual associated with General Agents.

B. Imputed Knowledge
In order for General Agents to be charged with knowledge of the request for non-owned and hired coverage, Mr. Woods would have to be considered an agent for General Agents and if he was, his knowledge of Poco's request would be imputed to General Agents. Tiner v. Aetna Life Insurance Company, 291 So.2d 774 (La. 1974); Raymond v. Zeringue, supra; Schexnaider v. Rome, 485 So.2d 245 (La. App. 3rd Cir.1986). General Agents contends that Mr. Woods was not its agent, but was a broker.
While the statutory definitions of agent, broker or solicitor may determine the type of license, prerequisites or examination is required, it is not determinative of whether, in a given instance, a broker or solicitor may not also serve as an agent of the insurer. Tiner, supra. Statutes regulating licensing and defining agents, brokers and solicitors, are not intended to change or to exclude the general laws of agency. Tiner, supra. Whether a broker in any particular transaction acts as the agent of the insured or of the insurer, is a question of fact dependent upon the circumstances of the case. Tiner, supra; Foster v. American Deposit Insurance Company, 435 So.2d 571 (La.App. 3rd Cir. 1983).
There is a distinction between insurance agents who are employed by an insurance company to solicit risk and effect insurance for that company, and insurance brokers, who solicit insurance from the public generally, under no employment from any particular company, placing the insurance with any company selected by the insured or, failing such selection, by *861 the broker himself. In the absence of special circumstances, an insurance broker generally is considered to be the agent of the insured in procuring a policy of insurance. Foster, supra. The issue of whether a person is an agent or a broker depends mainly on control. Thibodeaux v. Lumberman's Mutual Casualty Company, 448 So.2d 888 (La.App. 3rd Cir.1984).
An agent's power or authority is composed of his actual authority, express or implied, together with the apparent authority which the principal has vested in him by his conduct. As between the principal and third persons, the limit of an agent's authority to bind the principal is governed by his apparent authority. Sherif Boulos v. Lou Morrison DBA Casa Alejandro, 503 So.2d 1 (La.1987).
For the doctrine of apparent authority to apply, the principal must first act to manifest the alleged agent's authority to an innocent third party. Second, the third party must rely reasonably on the manifested authority of the agent. The burden of proving apparent authority is on the party relying on the mandate. Boulos, supra.
A third party seeking to benefit from the doctrine of apparent authority may not blindly rely upon the assertions of an agent. He has a duty to inquire into the nature and extent of the agent's power. Boulos, supra.
Mr. Woods is not contractually an agent for General Agents. The only authority which may have been given Mr. Woods by General Agents would be an apparent authority to act as the agent of General Agents in this particular case. We do not find that such apparent authority existed in this case.
Mr. Woods was contacted by Mr. McJunkins, on behalf of Poco, in an attempt to locate a particular type of insurance. Mr. Woods did not actively seek out insurance customers for General Agents. Indeed, there is no indication that Mr. Woods knew what insurance company would eventually place the coverage. Therefore, Mr. Woods' services were originally sought out by Poco, not General Agents.
The application by which Poco sought insurance was one previously filled out for U.S. Fire. Thus, Mr. Woods did not have Poco fill out an application form used by General Agents and, apparently, had no application forms issued by General Agents. However, after an oral binder had been issued, General Agents required that Poco fill out an application form used by General Agents. General Agents forwarded this form to Mr. Woods, who, in turn, forwarded it to Poco.
Similarly, Mr. Woods was used as a conduit between General Agents and Poco to communicate the oral binder and to collect the initial premium. Also, Mr. McJunkins and Mr. Meacham, and therefore Poco, were not informed of the name of the insurer until after the initial premium was paid. Therefore, Poco could deal only with Mr. Woods if some problem arose. There was no act committed by General Agents prior to the issuance of the oral binder and request for payment of premium that would indicate to Poco that Mr. Woods was an agent of General Agents.
While the acts of Mr. Woods constituting the transmission of information and payment between Poco and General Agents, may be viewed as acts on behalf of General Agents and thereby establish an apparent agency, we determine that this is not the correct factual conclusion. Mr. Woods was initially contacted by Poco in order for Mr. Woods to aid Poco in locating an insurance company which would issue an insurance policy giving Poco the desired coverage. Mr. Woods was not contacted by Poco in the hopes that Mr. Woods could sell a policy to Poco, but in the hopes that Mr. Woods could locate a seller. This is the business of an insurance broker. Additionally, those acts of Mr. Woods which may be viewed as acts on behalf of General Agents are more properly viewed as the act of an agent for Poco, communicating information to Poco which was received from an agent of General Agents. Thus, Mr. Woods was *862 simply relaying to his principal, Poco, that which was necessary to obtain insurance from General Agents. We conclude that Mr. Woods was clearly a broker in this situation, not an agent for General Agents.

III. Conclusion

Because of our determination that Mr. Woods was not an agent of General Agents, his knowledge of Poco's request for non-owned and hired vehicle coverage cannot be imputed to General Agents. Additionally, General Agents did not have actual knowledge of Poco's desire for non-owned and hired coverage. Therefore, the insurance contract issued by General Agents to Poco may not be reformed to include non-owned and hired vehicle coverage. Accordingly, General Agents is not liable for Poco's negligence.
Accordingly, the trial court judgment holding that the policy of insurance issued by General Agents Insurance Company to Poco Environmental Services, Inc. provided primary coverage for the claims made by plaintiffs in the main demand is incorrect and is hereby reversed and set aside. The trial court's judgment in favor of Blazer Construction Company, Inc., Poco Environmental Services, Inc., Raymond Weathers and Liberty Mutual Insurance Company against General Agents Insurance Company in the amount of THIRTY THOUSAND and NO/100 ($30,000) Dollars, representing one-half of the monies paid in settlement by plaintiff in cross-claim to Willie M. Reid and Robert Reid, Sr. and in the amount of ONE HUNDRED THIRTY-FIVE THOUSAND and NO/100 ($135,000) DOLLARS, representing one-half of the monies paid in settlement by plaintiff in cross-claim to Kenneth R. Boyter and Sondra K. Boyter, together with legal interest on that amount from the date of signing of the judgment until paid, is reversed and set aside.
Judgment is now rendered rejecting the demands of Liberty Mutual Insurance Company, Blazer Construction Company, Inc., Poco Environmental Services, Inc. and Raymond Weathers against General Agents Insurance Company, and their claims against General Agents Insurance Co. are dismissed, at their costs.
REVERSED.
NOTES
[1] Named as defendants herein are: Blazer Construction Co., Inc.; Poco Environmental Services, Inc.; General Agents Insurance Company; Raymond Weathers; Devard Meacham, Liberty Mutual Insurance Company, Allstate Insurance Co.; Commercial Union Insurance Co.; Bruce Beauty Supply, Inc.; First State Insurance Co.; and Empire Fire and Marine Insurance Co.