CHARLES R. JONES, Chief Judge.
_JjThe Appellants, Clyde H. Leblanc and his wife, Joanne Leblanc, seek review of the judgment of the district court granting the motion for summary judgment filed by the Appellee, Lafayette Insurance Company. Finding that the district court erred in granting the motion for summary judgment, we reverse the judgment of the district court and remand this matter to the district court for further review.
Clyde H. Leblanc and Joanne Leblanc (“the Leblancs”) owned two properties located respectively at 115 N. Genois Street and 3609 Canal Street in New Orleans (collectively referred to as “the Properties”). The Properties were insured by the Appellee, Lafayette Insurance Company (“Lafayette”), through the Leblancs’ insurance agent, 1555 Poydras Corporation, which was doing business as Independent Insurance Company (hereinafter “Independent”). The Leblancs occupied the property located at 115 N. Genois Street from 1945 to 1959, and subsequently gained a one-half interest in that property, as well as the adjoining property located at 3609 Canal Street in the 1970’s. However, the Properties had been insured by Lafayette for about a decade prior to the Le-blancs obtaining partial ^ownership. The Leblancs obtained the remaining one-half interest in the Properties after Hurricane Katrina in 2005, with Lafayette remaining as the insurer of the Properties. The insurance agreement between the Leblancs and Lafayette specifically stated in pertinent part that:
Questions concerning coverage or change of address, call your agent....
On November 29, 2007, the Leblancs and their son, Tom Leblanc, (“Mr. Leblanc”) executed a power of attorney giving Mr. Leblanc authority to act on their behalf for all of the Leblancs’ personal insurance policies, including those policies with Lafayette. Both Lafayette and Independent were informed that Mr. Leblanc was given the power of attorney with respect to the Leblancs’ insurance policies. On or about March 13, 2008, Mr. Leblanc notified the Leblancs’ insurance agent, Independent, of both the new mailing and new physical addresses of the Leblancs, and requested that Independent update the addresses with all insurance policies the Leblancs obtained through their agency. About one month later, on April 15, 2008, Mr. Leblanc received a phone call from Julie Bell, an agent of Independent, who notified him that the general liability policy covering the Leblancs’ properties was up for renewal. During that conversation, Mr. Leblanc again notified Independent of the change of addresses and requested that Independent change the Leblancs’ addresses on all of their policies with Lafayette. Later on that same day, Ms. Bell sent Mr. Leblanc a facsimile confirming their conversation and acknowledging the Leblancs’ change-of-address request.
|sOn May 28, 2008, Lafayette sent a notice to the Leblancs requesting payment of their insurance premium by June 19, 2008, to avoid termination of their policy. This pre-termination notice was returned to Lafayette undelivered. On June 23, 2008, Lafayette mailed to the Leblancs a notice of termination of their insurance policy. The notice of termination was also returned to Lafayette undelivered. Both the pre-termination notice and the notice of termination were addressed to the Le-blancs’ previous address, which had been changed with Independent. Neither Mr. Leblanc nor the Leblancs received a pre- *690 termination notice or a notice of termination from Lafayette, or from Independent. Lafayette failed to inquire further as to why the Leblancs failed to pay their insurance premium after being insured through Lafayette for several decades.
In August 2008, Hurricane Gustav ravaged New Orleans, causing damage to the Leblancs’ properties. When the Leblancs contacted Independent to file an insurance claim for damages sustained to the Properties during the hurricane, they were informed that the Properties were no longer insured.
On February 19, 2009, the Leblancs filed suit against Lafayette, Independent, and Ms. Bell. The Leblancs subsequently filed an Amended Petition to include as a defendant Brown & Brown of Louisiana, which owned and operated Independent. Lafayette answered the Petition denying liability, and in an attempt to dismiss the matter against it, Lafayette filed a Motion for Summary Judgment, which the district court later granted. In granting Lafayette’s motion, the district court concluded that Independent was a broker and was, therefore, not |4acting as an agent of Lafayette. Additionally, the court found that Lafayette’s attempt at notice was sufficient to terminate the policy. The district court subsequently signed the judgment citing the reasons orally assigned at the Summary Judgment hearing. The Leblancs timely filed this appeal and raise three (8) assignments of error:
1. Whether the district court erred in concluding that no genuine issues of material fact exist regarding the agency relationship between Lafayette and Independent;
2. Whether the district court erred in its interpretation of the law of agency resulting in the erroneous conclusion that there is no agency relationship between Lafayette and Independent; and
3.Whether the district court erred in concluding that no genuine issues of material fact exist as to the sufficiency of Lafayette’s notice of termination sent to the Leblancs’ representative.
A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. Samaha v. Rau, 2007-1726, p. 3 (La.2/26/08), 977 So.2d 880, 882. Appellate courts review a grant of summary judgment de novo using the same criteria applied by the lower court to determine if summary judgment is appropriate. Schroeder v. Board of Supervisors, 591 So.2d 342 (La.1991). Summary judgment shall be granted “if the pleadings, depositions, answer to interrogatories and admissions on file, together with the affidavit, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B). This article provides that “the summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every faction.... ” Further, “[t]he procedure is favored and shall be construed to accomplish these ends.” La. C.C.P. art. 966(A)(2). La. C.C.P. art. 966(C)(2) sets forth the burden of proof in summary judgment proceedings, providing:
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of *691 factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
This provision initially places the burden of producing evidence at the hearing on the motion for summary judgment on the mover, who can ordinarily meet that burden by submitting affidavits or by pointing out the lack of factual support for an essential element in the opponent’s case. Schultz v. Guoth, 2010-0343, p. 6 (La.1/19/11), 57 So.3d 1002, 1006.
At that point, the party who bears the burden of persuasion at trial (usually the plaintiff) must come forth with evidence (affidavits or discovery responses) which demonstrates he or she will be able to meet the burden at trial.... Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion.
Id., pp. 6-7, 57 So.3d at 1006. (quoting Wright v. Louisiana Power & Light, 2006-1181, p. 16 (La.3/9/07), 951 So.2d 1058, 1069-70).
In the matter sub judice, the Le-blancs argue that they are entitled to coverage under their insurance policies because the cancellation was caused by the negligence of Ms. Bell, in that she failed to change and record their new address, |Ras per the letter and verbal instructions of Mr. Leblanc. Further, the Leblancs argue that Lafayette and Independent have an agency relationship; therefore, Lafayette is negligent, as it is bound by the acts and/or omissions of its agent, Independent. The Leblancs filed their petition, as well as affidavits attesting to the fact that Lafayette delegated to Independent the authority to act as its agent in this particular context. Though the policy held between the Leblancs and Lafayette stated that cancellations of the policy had to be handled amongst the Leblancs and Lafayette respectively, the policy and billing statements therefor also stated that all questions and matters regarding changes in the billing and contact address on the policy were to be directed to, and handled between the Leblancs and Independent, rather than Lafayette.
Lafayette, in its motion for summary judgment, argued that no genuine issue of material facts existed; as such, summary judgment was warranted. Specifically, it claimed that there was no agency relationship between itself and Independent; therefore, Independent did not owe a duty to the Leblancs to report the change of address to Lafayette. Moreover, Lafayette argues that under La. R.S. 22:887[1], it *692 17performed all the duties required before terminating the insurance policy held by the Leblancs.
Lafayette further asserted that because the Leblancs are only directed to Independent for coverage and change of address questions and nothing else, such as billing, payments, and premium renewals, that it further showed there is no agency relationship between Lafayette and Independent, or a duty owed to the Leblancs by Lafayette for the negligence of Independent. Lafayette argued that the Leblancs failed to show an agency relationship which would impute Independent’s negligence onto it, and Lafayette further argues that it was not required to take any further actions other than what is required of it pursuant to La. R.S. 22:887(A)(5), (B), and (H) in cancelling the insurance policy.
jsThe district court in its evaluations, ruled that there was a lack of agency relationship between Lafayette and Independent because Independent, as the intermediary, was an agent of the Leblancs; therefore, the district court determined that Independent could not also serve as *693 the agent of the insured, Lafayette. Thus, the court held that Lafayette was not bound by the omissions of Independent to insure that the requests of Mr. Leblanc were carried out by Ms. Bell.
It is well recognized that the determination of “[w]hether an agency relationship exists between an insurer and an intermediary is a question of fact dependent on the particular circumstances of the case.” Kidd v. Independent Fire Insurance Company, 95-1278, p. 7 (La.App. 4 Cir. 1/19/960), 668 So.2d 406, 409-10 (citing finer v. Aetna Life Ins. Co., 291 So.2d 774, 778 (La.1974)). In Kidd, this Court reversed the district court’s ruling granting summary judgment in favor of the insurer and declared that “a trial on the merits is necessary to determine the parties’ relationship with respect to the particular transactions at issue,” despite the existence of an agreement between the broker and the insurer refuting any agency relationship. Id., p. 8, 668 So.2d at 410. This Court opined that “simply because a person sells insurance for more than one company does not preclude him from being an agent for all, or any, of them.” Id. Furthermore, in determining whether an intermediary is acting as an agent for an insurer, “the existence or non-existence of an agreement between an insurer and an intermediary is not necessarily dispositive of the issue of whether an agency relationship exists.” Id., p. 7, 668 So.2d at 410.
lain the matter sub judice, the record reflects that there are questions of material fact as to whether Lafayette should be held liable for the negligence of Independent in failing to change the billing and mailing addresses as instructed by Mr. Leblanc. Thus, the district court erred in granting Lafayette’s motion for summary judgment.
It is undisputed that there was an insurance policy held between the parties, the Leblancs, and Lafayette, with Independent as the agent, dating as far back as the 1960’s.
It is also undisputed that the policy agreement held between the parties directed the Leblancs to Independent for any changes in the policy regarding all billing and mailing addresses. The insurance agreement specifically stated in pertinent part:
Questions concerning coverage or change of address, call your agent....
Finally, it is undisputed that Mr. Leblanc, the Leblancs’ representative, informed an agent with Independent, Ms. Bell, of the address change and requested address changes on all of their policies. The record indicates that Ms. Bell confirmed this request by sending a fax confirmation back to Mr. Leblanc.
The Leblancs provided affidavits and evidence attesting to the actions they took in changing their addresses on their insurance policies with Lafayette. Therefore, the Leblancs provided sufficient evidence to demonstrate that they may be able to meet their burden at trial. With the undisputed facts and law, it is clear that numerous unresolved questions of fact exist as to why Independent failed to change the addresses as requested, and further as to why Lafayette directed its | ^insured to Independent for address changes, especially, if there was not an agency relationship between the two entities. Thus, we find that the district court erred in granting the motion for summary judgment filed by Lafayette.
Considering our finding that genuine issues of material fact exist as to the relationship between Lafayette and Independent, we reverse the ruling of the district court and pretermit discussion of the remaining assignments of error.

*694
DECREE

In sum, the record reflects that genuine issues of material fact exist as to whether Lafayette Insurance Company is liable for the negligence of Independent Insurance Company in failing to change the addresses on the insurance policies, leading to the cancellation of the insurance policies held between Clyde H. and Joanne Leblanc and Lafayette Insurance Company. Thus, finding that the district court erred in granting Lafayette Insurance Company’s motion for summary judgment, we reverse and remand the judgment of the district court for further proceedings consistent with this opinion.
REVERSED AND REMANDED

. La. R.S. 22:887 provides in part:
A. Cancellation by the insurer of any policy which by its terms may be cancelled at the option of the insurer, or of any binder based on such policy, may be effected as to any interest only upon compliance with either of the following:
(l)(a) Written notice of such cancellation must be actually delivered or mailed to the insured or to his representative in charge of the subject of the insurance not less than thirty days prior to the effective date of the cancellation except when termination of coverage is for nonpayment of premium.
(b) Upon the written request of the named insured, the insurer shall provide to the insured in writing the reasons for cancellation of the policy. There shall be no liability and no cause of action shall arise against any insurer or its producers, employees, or representatives for any action taken by them to provide the reasons for cancellation as required by this Subparagraph.
*692 (2) Like notice must also be so delivered or mailed to each mortgagee, pledgee, or other known person shown by the policy to have an interest in any loss which may occur. For purposes of this Paragraph, "delivered” includes electronic transmittal, facsimile, or personal delivery.
(3) Where written notice of cancellation or nonrenewal is required and the insurer elects to mail the notice, the running of the time period between the date of mailing and the effective date of termination of coverage shall commence upon the date of mailing.
(4) When the policy is a homeowner’s insurance policy, like notice shall be provided of any cancellation, or if, at the personal request of the insured, any such person is removed from the policy or substituted with another as provided in Subsection A of this Section.
(5) Any policy may be cancelled by the company at any time during the policy period for failure to pay any premium when due whether such premium is payable directly to the company or its agent or indirectly under a premium finance plan or extension of credit, by mailing or delivering to the insured written notice stating when, not less than ten days thereafter, such cancellation shall be effective. Nothing in this Code shall mandate a separate notice of lapse for nonpayment of premium of a policy defined as provided by R.S. 22:1460(G).
B. The mailing of any such notice shall be effected by depositing it in a sealed envelope, directed to the addressee at his last address as known to the insurer or as shown by the insurer's records, with proper prepaid postage affixed, in a letter depository of the United States Post Office. The insurer shall retain in its records any such item so mailed, together with its envelope, which was returned by the post office upon failure to find, or deliver the mailing to the addressee.
C. The affidavit of the individual making or supervising such a mailing, shall constitute prima facie evidence of such facts of the mailing as are therein affirmed.
[[Image here]]
G. (1) No insurer shall fail to renew a policy providing property or casualty insurance unless a notice of intention to not renew is mailed or delivered to the named insured at the address shown on the policy at least thirty days prior to the effective date of nonrenewal.
(2) Like notice shall also be delivered or mailed to each mortgagee, pledgee, or other known person shown by the policy to have an interest in any loss which may occur. For purposes of this Paragraph, "delivered” includes electronic transmittal, facsimile, or personal delivery.
(3) This Subsection shall not apply:
(a) To policies regulated by R.S. 22:1266 and 1267.
(b) If the insurer has manifested its willingness to renew the policy either through the same company or a company in the same group of companies.
(c) In the case of nonpayment of the premium.
(d) If the named insured has provided written notification to the insurer of the insured's intention to not renew the policy.
(e) In cases of fraud by the insured.
H. Notice of cancellation or nonrenewal given by the insurer in accordance with this Chapter shall be deemed sufficient. The producer shall not be required to give any separate or additional notice of cancellation or nonrenewal.