522 So.2d 1283 (1988)
Franklin FORD d/b/a Cajun Distributors
v.
GOLEMI, ALBRECHT INSURANCE and Champion Insurance Co.
No. 87-CA-561.
Court of Appeal of Louisiana, Fifth Circuit.
March 14, 1988.
Rehearing Denied April 1988.
Gary C. Ethridge, Baton Rouge, for defendant/appellant.
R.O. Lewis, Luling, for plaintiff/appellee.
Before GAUDIN, DUFRESNE and WICKER, JJ.
WICKER, Judge.
This appeal arises from a suit filed on behalf of plaintiff/appellant, Franklin Ford d/b/a Cajun Distributors (Ford), against defendants Golemi, Albrecht Insurance (Golemi)[1] and Champion Insurance Company (Champion). Champion (appellant) now appeals from the adverse ruling by the trial judge casting it in judgment in the amount of $3,600.00, 10% penalty, and attorney's fees in the amount of $1,500.00. We reverse.
As a result of sustaining property damage from a car accident Ford filed suit against Golemi and Champion seeking $150.00 per day in lost profits,[2] and property *1284 damage. Ford also seeks attorney's fees, penalties and court costs due to Champion's allegedly refusing to pay the property damage claim in an arbitrary or capricious manner or without probable cause. Champion issued its check for property damage on October 17, 1986. Thus the only claims before the court were loss of use or lost profits and attorney's fees, penalties and costs.
The testimony at trial set out the following: Ford and his wife, Tina went to Golemi in April, 1986 for the purpose of obtaining automobile insurance on two Omni automobiles used in their candy distributorship. Tina Ford testified that someone at the Golemi agency (only identified as "she") informed them that they had insurance coverage effective the date of the tendered check. She identified the cancelled check which was submitted with the application. The check was dated April 25, 1986.
Meredith Dufnac (Dufnac), an employee of United Southern Underwriters (the managing general agent for Champion), testified that on July 3, 1986 the Ford application arrived at their office. Ford identified the application as well as his signature. However, he stated that although the application is dated June 27, 1986 he was never in the Golemi office after he signed the application in April. He was convinced that his application had been altered with respect to the date.
The altered application which was submitted by Golemi to United Southern Underwriters contains Ford's signature as "applicant" as well as a signature line for "Broker."
Dufnac explained that United Southern Underwriters acts as agent for Champion in issuing, cancelling and endorsing policies. Golemi acted as a broker for Champion rather than as its agent. United Southern Underwriters as general agent for Champion is authorized to establish brokers. The brokers receive insurance applications as well as the underwriting guidelines.
The applications are sent to United Southern Underwriters on an "approval" basis. There are no contracts nor any agency agreements between Champion and the brokers. Furthermore, the brokers can represent other companies in addition to Champion.
Marla Guidry testified that on June 27, 1986 she was involved in an automobile accident while driving one of the Omni vehicles owned by Ford. Ford and his wife called Golemi two days after the accident to report their claim for damages as a result of the accident. Ford continued to call the Golemi agency. He was told each time that the claim was being taken care of. In addition, the Golemi agency told him that he was covered.
When he called Champion directly regarding his claim, he was given the "run around." He finally consulted an attorney when the phone had been disconnected at the Golemi agency. Furthermore, when Tina Ford called Golemi to ask for the policy, she was told that it was "being processed."
Dufnac testified that the underwriting guidelines requirements which are given to the brokers state that if a prospective insured wants coverage to begin on the date of the application, the broker has ten days in which to submit that application to United Southern Underwriters. If an application is not received by United Southern Underwriters within ten days from the date of the application, then coverage begins on the date on which the application is received. The Ford application was received by United Southern Underwriters on July 3, 1986. Mark Adamsky (Adamsky), claim superintendent at Champion, testified that Ford's loss notice was received by Champion on July 2, 1986. Since the loss notice had no policy number, an inquiry was placed with United Southern Underwriters through Dufnac.
On July 2, 1986 when asked about the policy number, Dufnac related to Champion *1285 that she had no record of an application. On the following date Dufnac received the application. However, the date had obviously been altered and so Dufnac placed a "red flag" on the file so that the proper date on which coverage began could be determined.
In addition to the difficulty in establishing the effective date of coverage, Dufnac also noticed two other problems with the application. There was no license number for one of the drivers making it difficult to "rate" the coverage. Furthermore, while the application indicated that the cars were to be used in business it did not specify the type of business. Since Champion does not provide insurance coverage for business use involving heavy equipment, a question existed as to whether coverage could even be confirmed. The applications are submitted "on approval basis" only.
On August 15, 1986 Dufnac's office communicated verbally with the Champion claim office and informed them that coverage had been approved with the date of coverage beginning June 27, 1986, consistent with the altered date. Dufnac did not specify the basis for that decision to extend coverage other than to say generally that it was a "management decision."
On August 15, 1986 a policy was issued to Ford. In addition a letter was sent to Ford requesting that he furnish Champion with an accident report. Adamsky stated that Ford never furnished Champion with the police report. Although Ford acknowledged that he received the August 15, 1986 letter requesting that he furnish the police report, he only thought that he had furnished the information.
To further confuse matters Ford gave the wrong date of the accident to his verified petition filed August 18, 1986.[3] In his petition Ford alleged that the accident occurred June 20, 1986 rather than on June 27, 1986. If indeed the accident had occurred on June 20, 1986 then the application containing the date of June 27, 1986 would have precluded coverage of the accident.
On August 26, 1986 a copy of the verified petition was received by Champion. Adamsky noticed that the lawsuit referred to a different date than that stated in the loss notice received from Golemi, therefore slowing the processing of the claim pending receipt of the accurate date from Ford. Not only was the date of the accident a problem, but the date on which Ford alleged he had gone to the Golemi agency to procure coverage. In his verified petition Ford averred that he had gone to Golemi on April 24, 1986 rather than June 27, 1986.
On August 27, 1986 Ford called the Champion office and informed them that the car was "totalled." With this information Champion responded by requesting that an appraisal be done by Pelican Claim Service. The appraisal was done on September 4, 1986. It was received by Champion on September 10, 1986.
Adamsky testified that Champion was prepared to issue a check for the damages on September 15, 1986; however, because there was a problem with the date of the accident the issuing of the check was delayed until October 17, 1986. Champion's check was received by Ford's attorney on October 22, 1986. In addition to paying for Ford's property damage in the amount of $4,496.60, Champion also paid property damage on two other vehicles involved in the accident as well as personal injury. A total of approximately $9,000.00 was paid.
Champion specifies the following errors on appeal:
1. That the trial court committed manifest error in finding that the Golemi & Albrecht Insurance organization was an agent of Champion Insurance Company;
2. That the trial judge erred in awarding the plaintiff statutory penalties and attorney fees, and
3. That the trial judge erred in awarding 120 days loss of use at $30.00 per day.
*1286 In his reasons for judgment the trial judge concluded that the loss occurred on June 27, 1986 and that the claim was not paid until October 20, 1986. He further concluded "that Golemi was held out by Champion to be their apparent agent." The trial judge also stated that "Golemi had to follow Champion's `underwriting guidelines' in order to do business with Champion", evidently basing the agency relationship on that fact.
In determining that Golemi was Champion's agent the trial judge concluded that Champion was responsible to Ford for the coverage. Although he conceded that Champion did eventually determine that there was coverage, he concluded that it failed to issue the proceeds timely.
L.S.A.-R.S. 22:1161 defines an insurance agent as "an individual who is [a]uthorized in writing by any insurer lawfully authorized to transact business in this state, to act as its representative[.]" L.S.A.-R.S. 22:1162 defines an insurance broker as who acts "as agent for an insured or prospective insured other than himself or itself, and not as a licensed agent of an insurer[.]"
In Raymond v. Zeringue, 422 So.2d 534, 536 (La.App. 5th Cir.1982) we considered the distinction between an insurance agent and an insurance broker as follows:
Insurance agents are persons employed by the insurance company to solicit risks and effect insurance. Insurance brokers solicit insurance from the public under no employment from any special company, placing the insurance with any company selected by the insured or, failing such selection, by the broker himself. The general distinction between them is that, in the absence of special circumstances, the broker is the agent of the insured in procuring the policy of insurance and does not represent the insurer. Foster v. Nunmaker Discount Company, 201 So.2d 215 (La.App. 4th Cir.1967). The acts of one procuring insurance as agent of the insurer are imputable to the insurer while those of one acting as agent of the insured, or as a broker, are not. Karam v. St. Paul Fire & Marine Insurance Co., 265 So.2d 821 (La.App. 3d Cir.1972), affirmed on other grounds, 281 So.2d 728 (La.1973).
Where an insurance agent acting under the scope of his authority fills out an application for insurance, his acts, representations, and mistakes are those of the insurance company so that if the agent by reason of fraud, mistake, negligence, or omission inserts erroneous or untrue answers to questions contained in the application, the representations bind the insurer but not the insured, provided the insured is justifiably ignorant thereof, has been guilty of no bad faith, and has no actual or implied knowledge thereof. Harris v. Guaranty Income Life Insurance Company, [226 La. 152], 75 So.2d 227 (La.1954).
Statutes [See L.S.A.-R.S. 22:1161, 1162] pertaining to the licensing of insurance agents, brokers and solicitors do not prohibit a finding that the legal relationship of principal and agent exists, so as to bind the insurer, despite the failure of the person acting for the insurer to have been specifically licensed as its agent. Whether an insurance broker in any particular transaction acts as agent of the insured or of the insurer is a question of fact dependent on the particular circumstances of the case. Tiner v. Aetna Life Insurance Company, [291 So.2d 774 (La. 1974).]
The record clearly establishes that no agency relationship had been established between Champion and Golemi. The trial judge was mindful of the lack of evidence to establish an actual agency relationship when he concluded that there was an apparent agency.
However, the Louisiana Supreme Court has recently enunciated the test for determining whether an apparent agency relationship exists in Boulos v. Morrison, 503 So.2d 1, 3 (La.1987). The Boulos court explained agency as follows:
Mandate is an act by which one person, a principal, gives power to another, an agent, to transact for him and in his name one or several affairs. LSA-C.C. art. 2985. An agent's power or authority *1287 is composed of his actual authority, express or implied, together with the apparent authority which the principal has vested in him by his conduct. See Interstate Electric Co. v. Frank Adam Electric Co., 173 La. 103, 136 So. 283 (1931). As between principal and agent the limit of the agent's authority to bind the principal is governed by the agent's actual authority. As between the principal and third persons, the limit of an agent's authority to bind the principal is governed by his apparent authority. Broadway v. All-Star Insurance Corp., 285 So.2d 536 (La.1973); Interstate Electric Co., supra. Apparent authority is a judicially created concept of estoppel which operates in favor of a third party seeking to bind a principal for the unauthorized act of an apparent agent. Broadway, surpa; Interstate Electric Co., supra.

For the doctrine of apparent authority to apply, the principal must first act to manifest the alleged agent's authority to an innocent third party. Second, the third party must rely reasonably on the manifested authority of the agent. As the Courts of Appeal have correctly held, the principal will be bound for the agent's actions if the principal has given an innocent third party a reasonable belief the agent had authority to act for the principal [Citations omitted]. The burden of proving apparent authority is on the party relying on the mandate. Bamber Contractors [v. Morrison Engineering & Contracting Company Inc.], [385 So.2d 327 (La.App. 1st Cir.1980]. [Emphasis supplied.]
A third party seeking to benefit from the doctrine of apparent authority may not blindly rely upon the assertions of an agent. He has a duty to inquire into the nature and extent of the agent's power [citations omitted; emphasis supplied].
The standard of appellate review of a trial court's findings of fact is set forth in Arceneaux v. Domingue, 365 So.2d 1330 (La., 1978) and Canter v. Koehring Co., 283 So.2d 716 (La., 1973). Where there is credible evidence before the trier of fact, which furnishes a reasonable factual basis for the trial court's conclusion, an appellate court should not reverse unless the trial court is clearly wrong. Factual conclusions of the trial court are entitled to great weight since the trial court is in a better position to evaluate the credibility of witnesses, and an appellate court should not disturb those conclusions unless clearly and manifestly erroneous [citations omitted].
The trial judge found that Ford had carried his burden in proving apparent authority. We disagree. Evidently the trial judge based his decision on the fact that Golemi was required to follow Champion's underwriting guidelines. Such a finding of fact, although correct, is insufficient for establishing apparent authority in light of Boulas, supra.
Furthermore, the record is devoid of any testimony from either Ford or his wife, Tina, indicating that they understood that Golemi was Champion's agent or that representations were made by Golemi to them in that respect. In addition, the application form signed by Ford clearly uses the language "broker" rather than agent. Ford did not testify that he went to Golemi to purchase Champion insurance; he testified only that he went to the agency to procure insurance.
Therefore, in consideration of the standard of appellate review enunciated in Arceneaux, supra and Canter, supra, we find reversible error regarding the finding of an apparent agency relationship between Champion and Golemi. Having found no agency relationship then it follows that Champion is not charged with Golemi's knowledge. Boyter v. Blazer Const. Co., Inc., 505 So.2d 854 (La.App. 2nd Cir.1987).
We also find an abuse of discretion insofar as the award of penalties, attorney's fees and loss of use pursuant to L.S.A.-R.S. 22:658. L.S.A.-R.S. 22:658 provides in pertinent part:
A. All insurers issuing any type of contract, other than those specified in R.S. 22:656 and R.S. 22:657, shall pay the amount of any claim due any insured, *1288 including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950, within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest.
B.(1) Failure to make such payments within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of ten percent damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, ten percent of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney fees for the prosecution and collection of such amount [Emphasis added].
This statute must be strictly construed as it is penal in nature. Hart v. Allstate Ins. Co., 437 So.2d 823 (La.1983); Guillory v. Gulf South Beverages, Inc., 506 So.2d 181 (La.App. 5th Cir.1987). The burden of proving lack of probable cause, arbitrariness or capriciousness is on the plaintiff. Batiste v. Pointe Coupee Constructors, 401 So.2d 1263 (La.App. 1st Cir.1981), writ denied 409 So.2d 615 (La. 1981).
In order for Champion to be liable for attorney's fees and penalties pursuant to L.S.A.-R.S. 22:658 Ford must be its insured. L.S.A.-R.S. 22:658. When Ford's loss notice was received by Champion on July 2, 1986 there was no Ford application yet filed. Although the application arrived on July 3, 1986 it was incomplete so that a determination of whether coverage could be extended to Ford could not be made absent further investigation. In addition, the application contained an altered date calling into issue the question of the date on which coverage would begin.
When Ford filed his verified petition, he averred that he applied for insurance from Golemi on or about April 24, 1986. Therefore, since Ford's application was not received by Champion within ten days from April 24th, coverage could only begin on July 3, 1986, the date of its receipt. Accordingly, Ford's petition states facts which indicate that he was not an insured of Champion's on the date of accident.
Furthermore, Ford's verified petition also states that the date of the accident is June 20, 1986 rather than June 27, 1986, the altered date. The allegations contained in the petition caused Champion to delay issuing a check pending a clarification.
Since there were serious issues in this case regarding (1) whether Ford was an insured, and (2) the effective date of coverage, we find that the trial judge erred in evidently concluding that Champion had acted arbitrarily, capriciously or without probable cause. L.S.A.-R.S. 22:658.
Accordingly, for the reasons stated the judgment in favor of plaintiff, Franklin Ford d/b/a Cajun Distributors and against defendant, Champion Insurance Company, in the amount of $3,600.00 with a ten percent penalty together with attorney's fees in the amount of $1,500.00 with legal interest thereon from date of judicial demand until paid and costs is hereby reversed.
Judgment is now rendered rejecting the demands of Franklin Ford d/b/a Cajun Distributors against Champion Insurance Company at plaintiff's/appellee's cost.
REVERSED
NOTES
[1] On April 1, 1987 a judgment of default was rendered against Golemi in the amount of $3,600.00 for loss of use of the vehicle with 10% interest from October 20, 1986 until paid, $2,000.00 attorney fees and costs.
[2] The testimony at trial is uncontroverted that Champion's insurance did not provide coverage for loss of use of the automobile. Furthermore, no evidence was presented by plaintiff supporting any award for lost profits or loss of use of the automobile.
[3] The trial was held on March 13, 1987. On June 23, 1987 plaintiff's counsel continued to assert in a trial memorandum filed that date that the accident occurred on June 20, 1986. Also, on the same date of June 23, 1987 plaintiff's counsel filed a supplemental trial memorandum in which he stated that the proper date was June 27, 1986.