BOWES, Judge.
The present appeal was perfected by the appellant and party in interest, Louisiana Insurance Guaranty Association (hereinafter LIGA) from a declaratory judgment finding that a policy issued by Champion Insurance Company (hereinafter Champion) did cover a vehicle owned and driven by the defendant, Mrs. Beverly Parrazzo, on the date of the accident in this case. We affirm.
Plaintiff, Mary Stewart, was involved in an automobile accident with Dominic Par-razzo, son of Mrs. Parrazzo, on August 5, 1986. Mrs. Stewart filed suit for damages arising out of the accident against Dominic and Beverly Parrazzo and State Farm Mutual Automobile Insurance Company (hereinafter State Farm), which provided uninsured/underinsured motorist coverage to Mrs. Stewart.
Mrs. Parrazzo filed a third party demand against Champion, The Golemi Agency, Inc., and the Golemi and Albrecht Partnership (hereinafter the Golemi Agency”), alleging that on the date of the accident in question she was insured by Champion through the Golemi Agency. State Farm also made a third party demand against Champion. Numerous pleadings followed; however, of importance to the issue before us today, is that Champion answered the third party demand denying coverage and filed a cross claim against the Golemi companies for indemnity.
On February 17, 1989, both third party plaintiffs, State Farm and Mrs. Parrazzo, filed a joint motion for a declaratory judgment on the issue of coverage — that is, whether or not the policy in question issued by Champion provided liability protection on the date of the accident. A hearing on the motion was held and, after taking the case under advisement, the trial court ruled that Champion was deemed to have coverage on the vehicle of the defendants.
Champion filed a motion for an appeal which was granted by the trial court. The appeal was originally dismissed from this court for failure to comply with Rule 2-8.6, Uniform Rules, Courts of Appeal. However, a panel of this court reinstated the appeal and ordered that LIGA, although not a party to the suit, is a real party of interest,[1] granting LIGA leave to file a brief in support of Champion’s appeal.
The policy in question shows an effective date of August 19, 1986 (two weeks after the accident). However, the Parrazzos and State Farm contend that Mrs. Parrazzo renewed her Champion policy and paid the premium due to the Golemi Agency in July, prior to the accident. Therefore, the question becomes one of agency — did the Gole-mi Agency have actual or apparent authority to bind Champion as the insurer of Mrs. Parrazzo on the date in question? On appeal, LIGA asserts that it was error for the trial court to find that an agency relationship existed between Champion and Gole-mi, contending that Golemi was a broker who had no authority, actual or apparent, to bind Champion.
It should be noted at the outset that LSA-R.S. 22:1162 defines a broker as follows:
“A “insurance broker” is hereby defined to be an individual, partnership, or corporation who or which shall, for a commission or brokerage consideration, act for or aid in any manner in negotiating contracts of insurance, or in placing risks or soliciting or effecting insurance as agent for an insured or prospective insured other than himself or itself, and not as a licensed agent of an insurer, and not as an insurance solicitor employed by a licensed agent. The broker is deemed for all purposes to be the representative of the insured. [Emphasis supplied]
The final (emphasized) sentence was added by the Legislature in 1988, subsequent to the events involved in this appeal. Therefore, the case must be analyzed under the law as it existed in 1986.
*581 At the hearing, Mrs. Parrazzo testified that sometime before 1985, she went to the Golemi Agency in order to purchase insurance. According to Mrs. Parrazzo:
“I just went there and they gave me the insurance company. They didn’t tell me what insurance company they were going through.”
At that time, the Golemi Agency delivered to the defendant a policy of insurance with Champion. It is not entirely clear whether that first policy expired prior to July 2, 1986. After telephoning the agency, Mrs. Parrazzo’s daughter brought a check payable to the Golemi Agency in the amount of $263.00 as a partial payment on the premium due for another policy. The remainder of the premium was financed through United Financial Services of Baton Rouge, Inc. (hereinafter UFS) at the rate of $90.44 per month. On August 4, 1986, Mrs. Parrazzo’s daughter brought a check for $90.00, also made out to Golemi, as the first payment on the financed premium. The accident occurred on August 5, 1986. Mrs. Parrazzo had received a “Proof of Auto Liability Insurance” card, issued by the Golemi Agency, which stated that she was insured by Champion Insurance Company, policy # TBA 1718, from July 2, 1986 to January 2, 1987. All of Mrs. Parrazzo’s dealings were with the Golemi Agency. The Agency personnel did all the paperwork, and all Mrs. Parrazzo did was affix her signature. She did not request that her insurance be placed with either Champion or any company in particular. No one at Golemi stated to her that they were agents of Champion, but, when asked:
Q. When you went to the Golemi Agency to buy your insurance, did you have any reason — were there any facts to indicate that you had reason to assume they were on Champion’s behalf as far as who was representing-
A. I figured they were representing both of us. I mean-”.
THE COURT: She doesn’t know that, counselor. She doesn’t have any idea about that. Let’s move along.
After the accident, Mrs. Parrazzo’s car was repaired and she paid only the deductible — it was not shown at trial who paid the balance of the repair bill.
Anna LeBlanc, Mrs. Parrazzo’s daughter, testified that when she brought the second check in, she asked one of the employees to verify whether Mrs. Parrazzo was insured. The employee telephoned Champion’s office and:
“She called and said, this is Kelly— whatever her last name is at Golemi and she said: I have Beverly Parrazzo’s policy, and she gave them the number, and I want to make sure they’re still covered because of the check still sitting in the office.
When she hung up, she said, you are still covered.”
A note, identified by Leon Golemi as having been written and initialed by Kelly Gluth, a former employee now residing out of state, was introduced into evidence. It said simply:
“Mrs. Parrazzo’s daughter (Anna Le-Blanc) brought check in on Aug. 4 and our girl called Champion to verify coverage and Champion confirmed coverage.”
Mrs. LeBlanc’s reference to “the check still sitting in the office” is not clear.
Leon Golemi, owner of the Golemi Agencies, testified that at the time the policy in question was issued, about 50% of his insurance business was written for Champion. Champion supplied the application forms. According to Golemi, Champion had a “binder line”, which the Agency would call to give pertinent information on the insured, the vehicle, the date and time coverage was to be in effect. In his opinion, he had authority to bind Champion. On cross-examination, he answered as follows:
Q. Could you tell me who gave you that authority?
A. That authority was either implied or suggested based on instructions in the United Southern Underwriters rate book as well as conversations with employees of Champion and United.
Q. What were you told by these individuals, Mr. Golemi?
*582 A. We are going back to an original contract date with a Champion representative with the agency, that in order to bond coverage, we used to have a telephone recorder, at which time, we would report the name of the insured, the description of the vehicle, date and time it was to be covered for, and these instructions were also given verbally as well as in front of the rate book.
Q. Were any other instructions given to you other than the ones that you just testified?
A. Concerning the bonding?
Q. Yes.
A. No, ma’am.
Q. Mr. Golemi, as far as you were of the understanding of how you were to process an application for Champion Insurance Company, isn’t it true that you had to forward that application to United Southern Underwriters for approval?
A. Yes.
Q. Is it your understanding that until United Southern Underwriters approved the application, there was no insurance coverage in effect?
A. No, ma’am. If you met the underwriting requirements of Champion, it would be an assumption that the policy would be issued, based on the understanding or instructions to employees of my agency, if they did not meet the underwriting requirements, do not submit it because it would be subject to not having the coverage enforced.
Mr. Golemi could not account for the variance in the dates of the checks for the premium, July 2nd and August 4th, and the policy inception date of August 19th. He verified that the proof of insurance card was one given by his agency, not Champion, and that he issued the cards because Champion often took months to do so, and that the dates on the card were based on the dates that the premium payments were made.
Golemi stated that, on one occasion, Champion stopped doing business with his agency, then apparently resumed the relationship. On a second occasion, Golemi stated that he stopped writing policies to them because it would take up to six months for Champion to issue a policy, and, further, that the insurance company would alter dates on the applications if a claim or problem arose.
Meredith Oufnac, office manager, at United Southern Underwriters (hereinafter United Southern), testified that United Southern was the only general agent for Champion in Louisiana with authority to issue, endorse, cancel, and service policies on behalf of Champion. The insurance is offered through licensed brokerage agencies. United Southern does not issue agency agreements; Champion does not have written contracts with any brokers. According to Ms. Oufnac, an application for insurance from an authorized agent is received into the office and goes through a process of being dated, coded, rated, etc. An application is dated from the time it is received in the office. When an application is telephoned to United Southern, the broker must submit the written application within 10 days; otherwise, the application is updated to the date received. Brokers do not have authority to issue any documents which purport to be binders of insurance.
She testified that the application of Mrs. Parrazzo was received at United Southern on August 22,1986, with a requested inception date of August 19th (the application itself shows the date of August 27 as the date received).
Ms. Oufnac continued that United Southern had had problems with Mr. Golemi in the past — one of those problems was that he did not comply with the underwriting guidelines regarding the ten-day period to submit the application; a number of his applications were updated.
THE APPLICABLE LAW
Clearly, Golemi was not the actual agent for Champion. As we said in Raymond v. Zeringue, 422 So.2d 534 (La.App. 5 Cir.1982):
Insurance agents are persons employed by the insurance company to soli- *583 eit risks and effect insurance. Insurance brokers solicit insurance from the public under no employment from any special company, placing the insurance with any company selected by the insured or, failing such selection, by the broker himself. By all accounts, Golemi was a broker.
The rule was further stated in Raymond:
... in the absence of special circumstances, the broker is the agent of the insured in procuring the policy of insurance and does not represent the insurer. Foster v. Nunmaker Discount Company, 201 So.2d 215 (La.App. 4th Cir.1967). The acts of one procuring insurance as agent of the insurer are imputable to the insurer while those of one acting as agent of the insured, or as a broker, are not. Karam v. St. Paul Fire & Marine Insurance Co., 265 So.2d 821 (La.App. 3d Cir.1972), affirmed on other grounds, 281 So.2d 728 (La.1973).
[[Image here]]
Statutes pertaining to the licensing of insurance agents, brokers and solicitors do not prohibit a finding that the legal relationship of principal and agent exists, so as to bind the insurer, despite the failure of the person acting for the insurer to have been specifically licensed as its agent. Whether an insurance broker in any particular transaction acts as agent of the insured or of the insurer is a question of fact dependent on the particular circumstances of the case.
See also Tiner v. Aetna Life Insurance Company, 291 So.2d 774 (La.1974).
In discussing the doctrine of apparent authority, our Supreme Court stated in Boulos v. Morrison, 503 So.2d 1 (La.1987):
As between principal and agent the limit of the agent’s authority to bind the principal is governed by the agent’s actual authority. As between the principal and third persons, the limit of an agent’s authority to bind the principal is governed by his apparent authority.
[[Image here]]
Apparent authority is a judicially created concept of estoppel which operates in favor of a third party seeking to bind a principal for the unauthorized act of an apparent agent.
For the doctrine of apparent authority to apply, the principal must first act to manifest the alleged agent’s authority to an innocent third party. Second, the third party must rely reasonably on the manifested authority of the agent. As the Courts of Appeal have correctly held, the principal will be bound for the agent’s actions if the principal has given an innocent third party a reasonable belief the agent had authority to act for the principal.
[[Image here]]
The burden of proving apparent authority is on the party relying on the mandate.
A third party seeking to benefit from the doctrine of apparent authority may not blindly rely upon the assertions of an agent. He has a duty to inquire into the nature and extent of the agent’s power,
[citations omitted]
[emphasis supplied]
In holding that in the case in question Mrs. Parrazzo was justified in concluding that she was covered “... considering the verity and interest of the witnesses ... ”, under Tiner and Raymond, supra, the trial court made the following finding:
“It is clear that the defendant Parraz-zo was led to believe that she had insurance with Champion. She had a previous policy from Champion which she had obtained from Golemi. She made application for a new/renewal policy before the 1st policy had expired. She made a down payment which was accepted by Golemi. She received a “proof of insurance” form as required by law, she made a 2nd payment on the policy to Golemi prior to the accident. Then, she had an accident in which her collision damage was paid per her claim less the $250.00 deductible.
Champion, who had stopped doing business with Golemi on at least one previous occasion, continued to allow him to write insurance for them, processing the application for insurance upon which *584 the dates appear to have been altered. The court does not have any information concerning the date alteration nor does it infer who may have altered the application. Champion issued a policy on this very same application without any difficulty when it was presented to them allegedly, post accident.”
The Supreme Court has recently expanded on the “manifest error” rule in Rosell v. Esco, 549 So.2d 840 (La.1989), when it said:
It is well settled that a court of appeal may not set aside a trial court's or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong,” and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.
[[Image here]]
The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong.
[[Image here]]
In applying the manifestly erroneous— clearly wrong standard to the findings below, appellate courts must constantly have in mind that their initial review function is not to decide factual issues de noi)o.2
[[Image here]]
When findings are based on determinations regarding the credibility of witnesses, the manifest error — clearly wrong standard demands great deference to the trier of fact’s findings; for only the fact-finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said.
[[Image here]]
Where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination.
But where such factors are not present, and a factfinder’s finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong,
[citations omitted]
The decision of the trial court in the present case was, as stated in the reasons for judgment, quoted hereinabove, based largely on the credibility or “verity” of the witnesses. We find after examining the application that the court’s determination that the date had been altered is a reasonable one. The determination that the telephone call to Champion, made by Golemi’s employee (Kelly) in the presence of Mrs. Parrazzo’s daughter, and at her request to verify coverage, indicated to Parrazzo that she had coverage, is also a reasonable and even obvious conclusion.
It appears that the court finally concluded that while neither Golemi nor Champion employed the most forthright business practices in these circumstances, that Champion had acted in such a manner as to manifest Golemi’s authority to Mrs. Parraz-zo, giving Mrs. Parrazzo a reasonable belief that Golemi had authority to act on its behalf. The telephone call requested by Mrs. Parrazzo’s daughter to confirm coverage is certainly a reasonable inquiry into the “nature and extent of the agent’s power”, as mandated in Boulos; and Mrs. Par-razzo was entitled to rely on the assurance of Kelly after the phone call that she did have coverage by Champion at that time.
*585 In its finding that Champion processed the application with altered dates, and had continued to do business with Golemi after having stopped dealing with him at least once because of his business practices, it appears that both Champion and Golemi acted in concert to manifest Golemi’s authority and, in the circumstances of the present case, we agree that Mrs. Parrazzo was justified in believing that Golemi was clothed with the apparent authority to act as an agent of Champion. We are also mindful that the policy in question was either a renewal or reapplication for insurance which Mrs. Parrazzo previously had with Champion, which further led her to believe that she was being insured by Champion. Under the evidence presented here, we are of the opinion that the findings of the trial court are reasonable conclusions and inferences of fact, which, after reviewing the record as a whole, we do not find to be manifestly erroneous.
We agree with the trial court that the present facts are substantially different from those in Ford v. Golemi, Albrecht Ins. Agency, 522 So.2d 1283 (La.App. 5 Cir.1988), on which appellant relies. In that case, the trial court had based its decision on finding that “Golemi had to follow Champion’s ‘underwriting guidelines’ in order to do business with Champion”, and this court found that reason to be insufficient to establish apparent authority under Boulos. While some of the facts are similar, there are notable differences which we feel fully distinguish Ford from the present case. Some of the differences are that the policy was a renewal or reapplication of a previous Champion policy; the telephone call resulting in a revelation of affirmative coverage made in the presence of Mrs. LeBlanc by a Golemi employee; and the rather obvious pattern, at least in the case at bar, of the “exceptions” to the regular course of business practiced by both Champion and Golemi.
We hold that the trial court was correct in its finding that Golemi had apparent authority under the facts of the present case to bind Champion, and that Champion allowed Golemi to hold himself out as its agent and Mrs. Parrazzo was entitled to rely on this. Therefore, Champion did have coverage on the defendant, Dominic Par-razzo, on the date of the accident.
For the foregoing reasons, the judgment appealed from is affirmed. All costs are assessed to appellant.
AFFIRMED.

. Champion was declared insolvent and placed on liquidation on June 5, 1989, by the 19th Judicial District Court for the Parish of East Baton Rouge. LSA-R.S. 22:1375 et seq. provides that LIGA has all the rights, duties and obligations of the insolvent insurer.