**INDEPENDENT FIRE INSURANCE COMPANY**

v.

**Robert W. LEA, Jr., et al.**

**Civ. A. No. 90–4293.**

United States District Court, E.D. Louisiana.

Oct. 10, 1991.

---

Thomas M. Richard, Hailey, McNamara, Hall, Larmann & Papale, Metairie, La., for Independent Fire Ins. Co.

John Robert Martzell, Martzell, Thomas & Bickford, New Orleans, La., Bruce Arne Cranner, Blue, Williams & Buckley, Metairie, La., for Robert W. Lea, Jr., J. Randall Lea and Elizabeth Lemoine Lea.

Frank Joseph Gremillion, Baton Rouge, La., for Richard Dennis Guffey.

## ORDER AND REASONS

CHARLES SCHWARTZ, Jr., District Judge.

This matter is before the Court on Cross–Motions for Partial Summary Judgment of plaintiff Independent Fire Insurance Company and defendants, Robert Lea, Jr., J. Randall Lea and Elizabeth Lemoine Lea, on the issue of whether defendant Richard D. Guffey was acting as agent of the Leas in connection with his attempt to procure a fire policy for them in December of 1989.

### I. *Procedural Background:*

Independent Fire Insurance Company ("Independent Fire") brought this declaratory judgment action pursuant to 28 U.S.C. § 2201–02 and 28 U.S.C. § 1332 seeking a declaration that it did not issue a policy or otherwise provide coverage for claims asserted by Robert W. Lea, Jr., J. Randall Lea and Elizabeth Lemoine Lea (the "Leas"). The Leas have asserted a counterclaim against Independent Fire seeking a declaration of coverage for said claims. Independent Fire has further asserted a claim against Richard D. Guffey d/b/a Dick Guffey Insurance ("Guffey"), against whom the Leas have also cross-claimed. Guffey is the owner of Dick Guffey Insurance, a general insurance agency, and was acting at all pertinent times as intermedi-

ary between the Leas and Independent Fire regarding procuring insurance for certain apartment buildings owned by the Leas.

## II. *Undisputed Material Facts:*

The Leas owned four apartment buildings located at 1168 and 1172 East Mary Poppins Drive and 1169 and 1173 West Mary Poppins Drive in Harvey, Louisiana.[1] In December of 1990, the Leas and Dick Guffey received notice of non-renewal from Republic dated December 11, 1989, regarding coverage to expire January 21st, 1990 on the aforementioned properties.[2] Prior to the aforesaid notification the Leas made claims against Republic through Guffey for fire damage and water damage on account of incidents occurring in October and December of 1989, respectively.[3] Republic would not renew the policies because of vacancy, physical conditions and roof conditions of the covered property.

Robert Lea contacted Guffey for the purpose of obtaining coverage to replace the Republic policies. Robert Lea did not instruct Guffey to procure coverage from any specific company, much less Independent Fire. At Lea's request, Guffey prepared a commercial insurance application on a standard industry form to replace the coverage afforded under the Republic policies. Guffey filled in the application and signed it in the place designated for "producer's signature." None of the Leas signed the application.[4]

The Leas made no inquiry into any alleged authority from Independent Fire at the time Guffey applied for insurance on their behalf. In fact, Robert Lea was not even aware that Guffey had submitted an application for insurance to Independent Fire. Robert Lea testified in deposition as follows:

Q. Is that also true with the fire coverage, when you received notice from Republic that the policies weren't going to

be renewed, you simply asked Mr. Guffey to procure fire coverage for you?

A. That's correct.

Q. You didn't ask him to place coverage with Independent Fire Insurance Company.?

A. No.

\* \* \* \* \* \*

Q. Were you even aware of the fact that he even submitted an application to Independent Fire Insurance Company?

A. Not at the time, no.

Q. That time being January of 1990?

A. Correct.

\* \* \* \* \* \*

Q. And you weren't concerned about him submitting an application before you had a chance to review it?

A. I didn't even know he submitted an application.[5]

It is not disputed that Robert Lea considered Guffey to be his insurance agent. He testified accordingly in deposition as follows:

Q. Did you have coverage on any other property besides property on Mary Poppins in Harvey through Republic?

A. Yeah.

Q. What other property was covered?

A. At the time, a building at 9263820 Bourbon Street.

Q. 926—

A. 2830 Bourbon Street.

Q. Was that also placed through Dick Guffey?

A. Yes.

Q. I believe you mentioned that Mr. Guffey also was your agent in connection with other insurance policies?

A. Yes.

Q. What other type of policies have you obtained through Mr. Guffey?

---

1. *See,* Joint Stipulations of Fact, at p. 5 no. 17 (I.F.Exh. "A").

2. *Id.* at p. 7 no. 24 (I.F.Exh. "A"). *See also,* Republic's Notices of Non–Renewal (P.Exhs. "22," "23," "24" and "25").

3. *Id.* at p. 6 nos. 20–23 (I.F.Exh. "A").

4. *Id.* at pp. 2 and 7, nos. 2, 3, and 24–26 (I.F.Exh. "A").

5. *See,* Deposition of Robert W. Lea, at pp. 16, 17 and 113 (I.F.Exh. "C").

A. Car insurance, life insurance, and other building insurance.

Q. How long has Mr. Guffey been your insurance agent?

A. About probably going on five years.[6] He further testified as follows: "You know how you have a lawyer and you have a CPA. Mr. Guffey has been my insurance man for five years, okay. So when I have problem with insurance, I call him and he solves it, okay." [7]

Guffey's application for insurance on behalf of the Leas to Independent Fire proposed coverage as of January 21, 1990 and was received by Yvonne Palmer, a commercial underwriter on January 9, 1990. Palmer notified Guffey that Independent Fire was unable to offer the package policy for which he applied, but quoted a premium for a different type of coverage, assuming $250 deductible and property coverage of $75,000 for each building.[8] On or about January 18, 1990, after receiving Palmer's quote, Guffey telephoned her to advise her that the quote was not acceptable. Guffey requested a requote based on a higher deductible and "basic" coverages, rather than "special" coverage.[9] Later that day, Palmer telephoned Guffey and provided a quote in accordance with the modified parameters of the proposed coverage.[10]

Guffey received a check from Robert Lea supposedly for coverage on the buildings at issue made payable to Guffey *not* Independent Fire.[11] The Leas never tendered any checks payable to Independent Fire.[12] Nor did Independent Fire ever receive a premium payment either from Robert Lea or Guffey. The $850 check made payable to Guffey was deposited into Guffey's bank account, and it was used for a premium payment on the First Financial O.L.T. policy issued to the Leas.[13] Guffey testified in deposition that it was used against his liability coverage procured from First Financial O.L.T. on the Leas' behalf and with Mr. Lea's permission.[14] Robert Lea never received a policy from Independent Fire.[15] Guffey never received a bill for a premium from Independent Fire and Guffey never forwarded any monies to Independent Fire representing a premium payment.[16]

Neither Lea nor his brother, Edward Lea, had any discussions with Guffey about the extent of Guffey's authority, if any, to bind coverage for Independent Fire.[17] As previously mentioned, Robert Lea admits he was not even aware that Independent Fire was a company from which Guffey was soliciting premium quotations or that Guffey submitted an application for insurance to Independent Fire on his behalf.[18] The buildings' co-owners, Randall and Elizabeth Lea, had no discussions with Guffey, and inasmuch as they reside in Missouri, did not take an active role in the management of subject apartment buildings.[19]

Under Independent Fire's underwriting guidelines, Guffey had no authority to bind coverage of the risk in question—that is,

6. Deposition of Robert Lea, at pp. 12–13 (I.F.Exh. "E").

7. Deposition of Robert Lea taken March 25, 1991, p. 36 (I.F.Exh. "C").

8. *See,* Joint Stipulations of Fact, pp. 8 and 10, nos. 27 and 33 (I.F.Exh. "A").

9. Deposition of Yvonne Palmer, pp. 22–23 (I.F.Exh. "F").

10. *See,* Joint Stipulations of Fact, p. 10, no. 34 (I.F.Exh. "A").

11. *See,* Copy of Check payable to Dick Guffey Insurance, dated January 19, 1990, in the amount of $850.00 (Leas Exh. "E").

12. Deposition of Robert Lea, p. 103 (I.F.Exh. "C").

13. Deposition of Richard Guffey, pp. 48, 49, and 91 (I.F.Exh. "D").

14. *Id.*

15. Deposition of Robert Lea, p. 100 (I.F.Exh. "C").

16. Deposition of Richard Guffey, pp. 33–34 (I.F.Exh. "D").

17. Deposition of Robert Lea, p. 62 (I.F.Exh. "E").

18. Deposition of Robert W. Lea, at pp. 16, 17 and 113 (I.F.Exh. "C").

19. *See,* Joint Stipulations of Fact, pp. 2 and 5, nos. 3 and 18 (I.F.Exh. "A").

coverage exceeding $35,000.[20] Upon receipt of the application submitted by Guffey, Yvonne Palmer quoted a premium under Independent Fire's standard fire and liability program.[21] According to Independent Fire's standard fire underwriting guidelines, any application submitted by Guffey was subject to home office approval. Even under Independent Fire's nonstandard fire and liability program, Guffey had authority only up to $35,000, a far cry from the amount of coverage stated in the application, i.e., $75,000.[22]

### III. *The Law:*

A. Statutory Definitions of the Terms "Broker" and "Agent" are not Determinative of Whether an Agency Relationship Exists between Intermediary and Insurer.

 The parties in the instant case agree that whether an agency relationship exists is a factual determination to be made in consideration of the totality of the circumstances. *Motors Insurance Company v. Bud's Boat Rental, Inc.,* 917 F.2d 199, 204 (5th Cir.1990); *Tiner v. Aetna Life Insurance Co.,* 291 So.2d 774, 777 (La. 1974); *Stewart v. Parrazzo,* 560 So.2d 579, 582 (La.App. 5th Cir.1990). Likewise, the existence or non-existence of a written agency agreement between an insurer and an intermediary is not dispositive of the issue of whether an agency relationship exists. *Britten v. Payne,* 381 So.2d 855 (La.App. 1st Cir.), *cert. denied,* 384 So.2d 800 (La.1980); *United Credit Plan of Jena, Inc. v. Hailey,* 341 So.2d 58 (La.App. 3rd Cir.1976).

In *Ford v. Golemi, Albrecht Insurance,* 522 So.2d 1283, 1286 (La.App. 5th Cir.1988), the Louisiana Fifth Circuit explained:

"Statutes [*See,* L.S.A.–R.S. 22:1161, 1162] pertaining to the licensing of insurance agents, brokers and solicitors do not prohibit a finding that the legal relationship of principal and agent exists, so as to bind the insurer, despite the failure of the person acting for the insurer to have been specifically licensed as its agent. Whether an insurance broker in any particular transaction acts as agent of the insured or the insurer is a question of fact, dependent on the particular circumstances of the case."

*Id.* (*citing, Raymond v. Zeringue,* 422 So.2d 534, 536 (La.App. 5th Cir.1982); and *Tiner,* 291 So.2d 774 (La.1974)).[23]

The court in *United Credit Plan of Jena,* supra, stated:

In *Karam v. St. Paul Fire & Marine Ins. Co.,* 265 So.2d 821 (La.App. 3rd Cir. 1972), *affirmed,* 281 So.2d 728 (La.1973), we quoted with approval the following statement in Appleman Insurance Law and Practice, Sec. 8725:

'A person delegated to solicit insurance for a particular company, and to refrain from soliciting insurance for any other company, is an agent, not a broker. The fundamental distinction in the legal result is that the acts of one procuring insurance as the agent of the insurer are imputable to it, while those of one acting as the agent of the insured, or as a broker, are not; the broker representing the insured for the purpose of procuring the policy, and the insurer only in order to receive and transmit the premium.' 341 So.2d at 61.[24]

 In the instant case at the time in question, the evidence clearly shows that Guffey was not an agent capable of binding Independent Fire for the property own-

---

**20.** Deposition of Yvonne Palmer, pp. 28 and 32 (I.F.Exh. "F").

**21.** Joint Stipulations of Fact, p. 10, no. 33 (I.F.Exh. "A").

**22.** *See,* Independent Fire Insurance Companies Commercial Lines Program (I.F.Exh. "G"); Independent Fire Insurance Company Standard Commercial Fire Program, p. 1–2 (I.F.Exh. "I");

Deposition of Yvonne Palmer, pp. 28 and 32 (I.F.Exh. "F").

**23.** *See also, Ackel v. Mid–South Underwriters, Inc.,* 377 So.2d 496, 499–500 (La.App. 3rd Cir. 1979), *cert. denied,* 378 So.2d 1389 (La.1980).

**24.** *See also, Britten v. Payne,* 381 So.2d 855 (La. App. 1st Cir.), *cert. denied,* 384 So.2d 800 (La. 1980).

ers' coverage requested. Guffey was free to place application with any one of several companies, including Independent Fire, and only upon approval of the home office would coverage be binding. Guffey was under no obligation to write for Independent Fire, nor did he hold a power of attorney for Independent Fire.[25] Rather, Independent Fire solicited brokers such as Guffey to place applications with the company before the risk could be underwritten.

Some discussion of the Seventh Circuit case, *Lazzara v. Howard A. Esser, Inc.*, 802 F.2d 260 (7th Cir.1986) appears to be in order as it is factually apposite. Though *Lazzara* was decided under Illinois law, it rests for its validity on precisely the same general sources of insurance law recited in the Louisiana Supreme Court case, *Karam, supra*—that is, both Appleman and Couch on Insurance.[26] In *Karam*, relying on said authorities, the court held:

> [T]hat in *procuring* the policy of insurance which was in effect when the loss occurred, Darbonne [the intermediary] acted solely as agent for Karam [the insured] and not as agent for Maryland Casualty Company.[27]

The *Lazzara* court reviewed a summary judgment motion involving the issue of whether the intermediary Esser was serving as the agent for Lazzara, or as the agent of the insurance company. Esser had agency agreements with several insurance agencies, including Aetna and Reliance, entitling Esser to bind insurance coverage and receive agency commissions for providing the insurance. Much the

same as Guffey and the Leas in the present case, Esser had handled Lazzara claims for years, prior to the loss at issue therein.[28] As did Guffey herein, Esser sought to obtain additional coverage on behalf of the insured without the insured instructing Esser as to how coverage was to be structured or with whom it was to be placed.[29] In summary, Lazzara called Esser into action by requesting he procure additional insurance on his behalf and wholly relied on Esser's judgment in that endeavor.[30]

The *Lazzara* court easily dismissed Esser's argument that its agency agreement with the insurance companies established a "fixed and permanent" relationship between the insurers and Esser, stating:

> The agency agreement does not establish a 'fixed and permanent' relationship between the insurers and Esser for the purpose of acquiring and maintaining insurance. Esser was permitted to solicit from any person it desired, was not required to broker a particular amount of business annually and was not paid a salary. It had no allegiance to any insurance company. It was permitted to and in fact did, enter into such agency agreements with other companies.[31]

The facts in the present case relating to the pertinent areas of inquiry in determining whether an agency relationship existed are not disputed, and are enumerated as follows: (1) Independent Fire did not require Guffey to refrain from soliciting insurance for other companies, rather he was free to place insurance with other companies and in fact did so;[32] (2) Guffey was a self-described "general" or "independent"

---

**25.** The "Agency Agreement" (Leas Exh. "A") does not require Guffey to refrain from soliciting insurance for any other companies. It rather provides in pertinent part: "That nothing contained herein shall be construed to create the relationship of employer employee between the Company and Agent or any sub-agent of the Agent." It is not disputed that Guffey was free to place insurance with other companies, and did so from time to time while representing the Leas. Inasmuch as Guffey unquestionably solicited insurance for more than one company, he was at all pertinent times and still is a "general" or "independent" agent representing several companies. *See,* Deposition of Richard Guffey, pp. 16, 17, 52 and 53 (I.F.Exh. "D").

**26.** 265 So.2d at 824.

**27.** *Id.* at 825.

**28.** *Lazzara,* 802 F.2d at 263.

**29.** *Id.* at 263–64.

**30.** *Id.* at 265.

**31.** *Id.*

**32.** *Karam,* 265 So.2d at 824–25; *Britten,* 381 So.2d at 858; and *United Credit Plan of Jena, Inc.,* 341 So.2d at 61.

agent, i.e., he solicited insurance for more than one insurer;[33] Guffey was not able to bind Independent Fire without home office approval;[34] the Leas relied on Guffey's judgment to procure coverage from wherever at the best price;[35] and the Leas called Guffey into action, controlling same, accordingly, Guffey obviously represented their interests.[36]

As to payment of Guffey, the facts are not controverted that the only payment to Guffey came from the Leas and was used for a premium payment to First Financial O.L.T.

Literally, all the undisputed facts material to the resolution of the issue of agency, in every respect compel this Court to conclude that Guffey was acting solely as the agent for the Leas in his attempt to procure insurance on their behalf for the apartment buildings at issue.

The Court disagrees with the Leas' argument that *Tiner v. Aetna Life Insurance Co.*, 291 So.2d 774 (La.1974) is authority for finding Guffey to be an agent of Independent Fire. The *Tiner* court stated:

'[I]f one purporting to act as an agent receives an application, accepts the premium, secures and delivers the policy and does everything necessary to attachment of the risk, the insured may assume that he is the properly authorized agent of the insurer.'[37]

*Tiner* goes on to state the general principle that:

'[W]hether a broker in any particular transaction acts as the agent of the insured or the insurer, is a question of fact dependent on the particular circumstances of the case.'[38]

Moreover, there is an important distinction between the facts of *Tiner* and the undisputed facts of this case. In *Tiner*, the insurer who was sought to be held liable for the acts of its purported agent had issued an insurance policy based on an application completed by that agent. In the case at bar, no policy was issued by Independent Fire as a result of the actions of Guffey.[39]

Inasmuch as there is no genuine dispute as to any *material* fact, the issue of whether Guffey was acting as the agent of the Leas or the agent of Independent Fire, is ripe for determination as a matter of law.

**B. Apparent Authority.**

Apparently mindful of the utter lack of competent evidence to establish that an actual agency relationship existed as between Guffey and Independent Fire, the Leas argue "apparent authority." However, the Louisiana Supreme Court has recently enunciated the test for determining whether an apparent agency relationship exists in *Boulos v. Morrison*, 503 So.2d 1, 3 (La.1987). The *Boulos* court explained agency as follows:

Mandate is an act by which one person, a principal, gives the power to another, an agent, to transact for him and in his name one or several affairs. L.S.A.-C.C. art. 2985. An agent's power or authority is composed of his actual authority, express or implied, together with the appar-

---

**33.** *Motors Ins. Co. v. Bud's Boat Rental, Inc.*, 917 F.2d 199, 204 (5th Cir.1990). In *Motors Insurance Inc.*, the Fifth Circuit concluded that a broker who solicits business for more than one insurer, who has no power to bind without permission, or who is asked by the client to procure coverage wherever possible at the best price, is not an agent of the insurer, even if he uses application forms or advertising decals with the insurer's name. *Id.*

**34.** *Id.; Britten*, 381 So.2d at 858.

**35.** *Motors Ins. Co.*, 917 F.2d at 204; *Lazzara*, 802 F.2d at 264; *Karam*, 265 So.2d at 824; *Ackel v. Mid–South Underwriters, Inc.*, 377 So.2d 496, 500 (La.App. 3rd Cir.1979).

**36.** *Id.* at 264.

**37.** 291 So.2d at 777 (*quoting*, 3 Couch on Insurance 2nd, § 26:25, pp. 481–482 (1960).

**38.** *Id.* at page 778 (*quoting*, 3 Couch on Insurance 2d, §§ 25:95, 26:152, 153 (1960)).

**39.** *Cf., Baptiste v. Security Insurance Group*, 416 So.2d 279, 280 (La.App. 3rd Cir.1982), *cert. denied*, 421 So.2d 909 (La.1982) (affirming summary judgment in favor of the insurer and finding as a matter of law no agent-principal relationship existed between LaCombe, as agent, and American or Opelousas Underwriters as principals).

ent authority which the principal has vested in him by his conduct. As between principal and agent the limit of the agent's authority to bind the principal is governed by the agent's actual authority. As between the principal and third persons, the limit of an agent's authority to bind the principal is governed by his apparent authority. Apparent authority is a judicially created concept of estoppel which operates in favor of a third party seeking to bind a principal for the unauthorized act of an apparent agent. *Id.* at 3.

■ The *Boulos* court lists the necessary showing required of the party invoking the doctrine of apparent authority as follows: [T]he principal must first act to manifest the alleged agent's authority to an innocent third party. Second, the third party must rely reasonably on the manifested authority of the agent. As the Courts of Appeal have correctly held, the principal will be bound for the agent's actions if the principal has given an innocent third party a reasonable belief the agent had authority to act for the principal. *The burden of proving apparent authority is on the party relying on the mandate. Id.* (citations omitted and emphasis supplied). Furthermore, a party seeking to benefit from the doctrine of apparent authority may not blindly rely upon the assertions of the agent. Rather, he has a *"duty to inquire into the nature and extent of the agent's power." Id.*[40]

■ In the case at bar there is a complete failure of proof on the essential elements respecting the invocation of the doctrine of apparent authority. Robert Lea's testimony is uncontroverted that he contacted Guffey to procure insurance and not Independent Fire coverage. His testimony was further to the effect that he had no inkling at the pertinent time that Guffey was attempting to negotiate coverage on his behalf with Independent Fire, or that Guffey had sent an application for insurance on his behalf to Independent Fire.[41] It is further undisputed that the Leas made no inquiry whatsoever into the nature and extent of Guffey's authority, but rather, blindly relied on him to resolve their insurance problems as they had done for approximately 5 years preceding January of 1990.[42] The Leas failed to inquire, notwithstanding the fact that Independent Fire *never issued a policy* and the Leas *never received a policy* from Independent Fire on the subject property.

■ Furthermore, there is no authority for the proposition that issuance of notices of non-renewal on "dummy policies"[43] as a result of clerical error creates coverage by estoppel. More to the point Louisiana law is to the opposite effect, that estoppel cannot be used to create coverage beyond that actually set forth in an insurance policy.[44] Aforementioned notices of non-renewal bearing in actuality claims loss identification numbers 30–9999002 and 003, *not policy numbers,* were not transmitted until December 28, 1990, 8 months after the fire damage which is the subject of the Leas' property damage claims against Independent Fire. It is not disputed that a policy was never issued by Independent Fire to the Leas, and no premium was received, therefor. As previously mentioned, the Leas' $850.00 check *made out to Guffey* was applied to the First Financial O.L.T. policy Guffey procured on the Leas' behalf.

**40.** *See also, Ford v. Golemi, Albrecht Insurance,* 522 So.2d 1283, 1287 (La.App. 5th Cir.1988).

**41.** *See,* Deposition Testimony of Robert W. Lea, at pp. 16, 17, 113 (I.F.Exh. "C").

**42.** *Id.* at p. 36. *See also,* Sworn Statement of Robert W. Lea and Edward Lea, p. 62 (I.F.Exh. "E").

**43.** In reality these were claims item numbers. Independent Fire in 1990 began nonrenewing all commercial package policies designated by the prefix 30. The computer automatically each month pulled up policies bearing the pre-fix 30 designating commercial packages and sent out non-renewal notices. Deposition of Yvonne Palmer, pp. 56–58 (I.F.Exh. "F").

**44.** *Smith v. Republic National Life Insurance Company,* 335 So.2d 739 (La.App. 2nd Cir.), *cert. denied,* 338 So.2d 706 (La.1976).

Where as here, the non-moving party bears the burden of proof at trial on a dispositive issue, summary judgment motion may be properly made in reliance solely on the pleadings, depositions, answers to discovery, admissions on file, and affidavits, so that the non-moving party must go beyond the pleadings to show that there is a genuine issue for trial on the merits.[45] Accordingly, considering the submissions of the parties, the applicable law, and the undisputed facts,

IT IS ORDERED, that the Motion for Partial Summary Judgment filed on behalf of defendants the Leas is hereby DENIED.

IT IS FURTHER ORDERED, that the Cross–Motion for Partial Summary Judgment filed on behalf of plaintiff Independent Fire is hereby GRANTED declaring that third-party/cross-defendant Richard D. Guffey was not acting as agent for Independent Fire in connection with his attempt to procure coverage for the Leas.

---

**45.** *See, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celo-tex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).